## Wellington v. Commonwealth.

(Decided March 20, 1914.)

### Appeal from Livingston Circuit Court.

1. Homicide—Circumstantial Evidence— Instructions. — Generally where the evidence of a homicide is purely circumstantial it is the duty of the court to give the whole law of the case, and especially where there is evidence of a struggle at or about the place of the killing; but manslaughter and self-defense instructions are not necesary where the principal testimony against a defendant consists of his own statements, and no such statement shows how the killing occurred, and when considered in connection with previous threats by defendant and clear evidence of the motive.

2.  Homicide—Instructions.—Where there was evidence that another
and not the defendant had killed the deceased, the jury should
have been told that if from all the evidence they had a reason-
able doubt as to which one of them did the killing they should
find the defendant not guilty; but in this case the failure to so
instruct was not prejudicial because the court in other instruc-
tions required the jury to believe beyond a reasonable doubt
that the defendant did the killing, and in another told them
that if they entertained a reasonable doubt as to the defendant
having been proven guilty they should find him not guilty.

3.  Accomplices.—One who was not present at the time of the
commission of a crime and knew nothing of it until after it was
committed, is not an accomplice.

4.  Sweating—Purpose of Act.—It was not the purpose of the Anti-
Sweating Act of 1912 to make incompetent, as against one
charged with crime, his voluntary statements.

5.  Criminal Law—Evidence.—Evidence of other and different
crimes is competent where they tend to prove a motive for the
commission of the crime charged.

DAVID BROWNING, F. E. GRAVES for appellant.

JAMES GARNETT, Attorney General; M. M. LOGAN, Assistant
Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellant was indicted in the Livingston Circuit
Court charged with the murder of Frank Longnecker,
and upon his trial was convicted and sentenced to the
penitentiary for life from which judgment he appeals.

The evidence disclosed on the trial was that appel-
lant, Longnecker, and a woman called Pearl Hughes left
Cincinnati in a house-boat and went down the Ohio river
during the fall of 1912; that at Mount Vernon, Ill., they
fell in with a man by the name of Frank Meisberger and
a woman called Bessie Rutman who were also occupying
a house-boat, and Meisberger having an engine on his
boat, by agreement they lashed the two boats together
and proceeded down the river propelled by his engine.
They stopped at various points along the river, at times
stealing hogs, provisions, and upon one occasion break-
ing into a store and stealing articles of clothing. Finally
about the 19th or 20th of December they landed on the
Kentucky side in Livingston County near what is known
as Rondo Island. Along the route considerable friction
and feeling developed between appellant and Long-
necker; Longnecker threatened to leave the party, go to
Chicago and telephone back to the authorities giving

information about the various crimes that had been committed. Appellant complained that Longnecker was talking too much and would get them all in trouble, and threatened upon more than one occasion to get rid of of Longnecker. There is also evidence tending to show that appellant was jealous of Longnecker's attentions to the Hughes woman. On the 26th of December, the dead body of Longnecker was found on Rondo Island with two knife wounds in his heart and his throat cut from ear to ear.

The testimony of the two women and Meisberger is that on the night of the 21st of December appellant and Longnecker got into a john-boat and started towards Rondo Island; that Longnecker had a shot-gun and a butcher knife, and appellant a butcher knife, a black-jack, and one of them says, a pistol; they say that a short time after they left a shot was heard in the direction of the island, and that sometime later appellant returned to the anchored boats and said that he had gotten rid of Longnecker and had hidden his body in a pile of brush on the island, and that either the hogs would destroy the body or a rise in the river would wash it away. The balance of the party then proceeded down the river stopping at Paducah, and while there were arrested charged with the crime. The evidence of the persons who found the body is that it was found on the island, partially mutliated by hogs, and that by reason of the lapse of time and the hoof-prints of the hogs it was impossible to discover from the surroundings any evidence tending to show whether there had been a struggle between the men.

Appellant's version of the death of Longnecker is that Longnecker and Meisberger had a difficulty on the boat; that Longnecker was chasing Meisberger around a stove on the boat with a butcher knife, and that just as he was about to get near enough to Meisberger to stab him he (appellant) threw a stick of wood and struck Longnecker on the head, whereupon Meisberger turned and stabbed him and cut his throat. That he and Meisberger then agreed to take the body over to the island and hide it, but when they were prepared to start in the john-boat the two women said they were afraid to stay by themselves, whereupon he went with the body alone and placed it upon the island and left Meisberger with the women. A hat found near the body of Longnecker on the island was identified as his hat, and the body when

found had on a coat closely buttoned up to the chin and under that a jumper, and it is shown that the two knife wounds in the breast did not cut through either the coat or the jumper but did cut through the vest and underclothing.

Appellant complains of the failure of the Court to instruct the jury upon the whole law of the case, and especially to give instructions upon manslaughter and self defense. It is the general rule that where the evidence of a homicide is purely circumstantial ordinarily it is the duty of the court to give the whole law of the case, and especially where there is evidence of a struggle at or about the place of the killing; but in this case, if the theory of the Commonwealth is correct, while there was no eye-witness except appellant himself the evidence is not wholly circumstantial, but rests almost entirely upon the statements of appellant himself, and no one of the three witnesses testifies to any statement of appellant as to how the killing occurred or any statement of his indicating that there was any struggle between them or any altercation whatever. The testimony of the three witnesses as to the statement of appellant, that he had killed Longnecker on the island without giving the details as to how he had done so, when taken in connection with his previous threats and with the very plain motive which actuated him, almost necessarily precluded the idea that there was a struggle or that the killing was done in self defense. Certainly if appellant himself had not testified, and there had been no evidence except that of the three witnesses, the action of the Court would have been proper.

But, taking appellant's version of the matter we cannot see how he could possibly have been prejudiced by a failure to give a manslaughter or self defense instruction, when he himself testified that he did not do the killing, and another did; for if the jury had believed his statement appellant would of necessity have been acquitted.

It is further complained that the Court erred in instructing the jury that if they believed from the evidence that Meisberger and not the defendant killed Longnecker they would find the defendant not guilty because the instruction does not embrace the idea that if from all the evidence the jury had a reasonable doubt as to which one of them did the killing they should find the defendant not guilty and if this was the only instruction bearing upon

that question the point would be well taken. But, the instructions must all be considered together, and the Court in the first instruction required the jury to believe beyond a reasonable doubt that the defendant did the killing before they could find him guilty, and in the fifth instruction the jury was told that if they entertained a reasonable doubt of the. defendant having been proven guilty they would find him not guilty. Taking these instructions all together there was no prejudicial error.

It is complained by appellant that the Court should have instructed the jury as to the effect of the testimony of the three chief Commonwealth witnesses under the provision of section 241 of the Criminal Code that a conviction cannot be had upon the testimony of an accomplice alone without corroborating evidence connecting the defendant with the commission of the crime. But, upon the theory of the Commonwealth in this case the three witnesses were certainly not accomplices because they were not present at the time of the commission of the offense if committed on the island, and knew nothing of it until after it was committed; and according to the testimony of appellant, Meisberger was not an accomplice, but was in fact the principal, and the act of appellant in throwing the stick of wood at Longnecker to prevent him from killing Meisberger certainly did not make appellant an accomplice of Meisberger.

The appellant complains of the admission of the testimony of the jailer of Livingston County of statements made to him by appellant under the Anti-Sweating Act of 1912; but this objection is not well taken. This Court has recently held that it was not the purpose of that Act to prevent a defendant from voluntarily making statements tending to connect him with the commission of a crime. Commonwealth v. McClanahan, 153 Ky., 417; Deaton v. Commonwealth, 157 Ky., 315.

It is also complained that it was prejudicial to admit evidence as to the previous crimes committed while the party was coming down the river; it is sufficient to say in response to this that this evidence taken in connection with the threats of Longnecker to inform the authorities was competent for the purpose of showing a motive upon the part of appellant.

Upon the whole case we see no prejudicial error, and the judgment is affirmed.