## Barton v. Commonwealth.

(Decided February 17, 1931.)

HEAVRIN & MARTIN, for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for the appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON— Reversing.

The appellant was indicted for willful murder. On his trial he was convicted of voluntary manslaughter, and his punishment fixed at twenty-one years in the penitentiary. He appeals.

The evidence shows that on Saturday night, June 28, 1930, Leslie Woolens, Stanley Sanders, and Randall Lambert rode horseback to church at Olaton. On their way Oscar Vittitoe joined them. On arriving at the church they dismounted and hitched their horses. It was getting dark when they arrived. They stood around in front of the church and talked. After their arrival, the appellant, Otha Barton, came to the church. He and Vittitoe left from in front of the church and went down the road which passed the front of the church. They were seen standing in the road a short distance from the church talking to each other. This was about an hour and a half after Leslie Woolens and his companions first arrived at the church. Barton returned to the front of the church, where he requested Woolens "to come down there, that he wanted to talk to him, to see him a minute."

After they had been gone for about ten minutes, Stanley Sanders, Noble Miller, and Randall Lambert left the front of the church to look for Leslie Woolens. They went down the road and found Barton and Vittitoe standing in the road. They spoke to Sanders, Miller, and Lambert. Sanders, Miller, and Lambert looked for Woolens, and, failing to find him, returned to the front of the church. Woolens came back in not more than three minutes from the time Sanders, Miller, and Randall Lambert observed Vittitoe and Barton standing in the road, about thirty-nine steps from the church. When Woolens came up to them in front of the church, his eye was swollen and a cut place was upon his forehead. He said to Sanders, "Let's go home." His ear and forehead were bleeding. Woolens then stated in the presence of Sanders, Lambert, and perhaps others that "Barton and Vittitoe beat him up down there with a black-jack and knucks; that they had hit him about the same time when one was behind him and one in front." After he made these statements, Sanders, Lambert, and Woolens got on their horses and left for home. On their way home they stopped at Henry Edison's to get a doctor for Woolens. "He was getting worse." He was taken into the house and the blood washed off. He had been struck on the forehead and behind one ear. He had stopped bleeding when he arrived at Edison's, but had been bleeding at the nose, ear, and forehead. Next morning his eye was swollen and he was unconscious. He was taken on Sunday by train to a hospital at Owensboro, where he lived until 1 o'clock the next morning. He received his injuries on Saturday night.

Sanders and others were permitted, over defendant's objections, to testify, giving the conversation of Woolens describing his injuries and their infliction.

The deputy sheriff was permitted to testify, giving in detail a conversation he had with appellant after he was arrested on this charge. D. S. Clouse and Dan Clouse testified as to certain statements made by him in their presence while he was under arrest, and in the custody of the deputy sheriff.

As grounds for reversal, he insists (1) that the statements of deceased to Sanders, Miller, and Lambert are incompetent; (2) that his own statements to the deputy sheriff while he was under arrest are incompetent; (3) that his statements to, and in the presence of, D. S.

Clouse and Dan Clouse are incompetent. He further complains of (4) improper argument of the commonwealth's attorney; (5) error of the court in overruling demurrer to the indictment; (6) that the instructions given to the jury are erroneous; (7) that the verdict is contrary to the law and the evidence; (8) error of the court in refusing to give a peremptory instruction; and (9) that the court erred in not permitting Dr. Byers to answer a certain hypothetical question.

There is no merit in his insistence that a demurrer should have been sustained to the indictment. It is in the usual form, and states facts sufficient to constitute the crime of willful murder.

The statements of appellant as narrated by the deputy sheriff and D. S. and Dan Clouse were voluntarily made by him. No coercion, persuasion, improper actions, or conduct on the part of the deputy sheriff or either of the Clouses inducing his statements is shown by the evidence. Roark v. Com., 217 Ky. 539, 290 S. W. 314; Wellington v. Com., 158 Ky. 161, 164 S. W. 333; Garrison v. Com., 169 Ky. 188, 183 S. W. 473; Helm v. Com,. 156 Ky. 751, 162 S. W. 94; Dorsey v. Com., 158 Ky. 447, 165 S. W. 405; Bennett v. Com., 175 Ky. 540, 194 S. W. 797.

The admission by the court of the testimony of Sanders and others narrating the statements of the deceased on his return to the church, after he received the injuries which evidently produced his death, presents a more difficult question. The statements of deceased to Sanders and others describing the alleged assault upon him by Barton and Vittitoe were incompetent. They were not a part of the transaction occurring at the time he received his injuries.

Spontaneity, as distinguished from a mere matter of time, has come to be considered the determining factor when passing upon the competency of statements made by one injured when narrating or describing how his injuries were inflicted.

"The principle deducible from the authorities is that statements of the injured party, accompanying the transaction, and made under such circumstances as will raise a reasonable presumption that the declarations are the spontaneous utterances of thoughts springing out of the transaction itself and made so soon thereafter as to

exclude the presumption of design, constitute competent testimony.'' National Life & Accident Insurance Co. v. Hedges, 233 Ky. 847, 27 S. W. (2d) 422, 425.

A statement, to be admissible as part of the res gestae, ''must be the act talking for itself, not the person talking for the act. It must be the apparently spontaneous result of the occurrence operating upon the perceptive senses of the speaker.'' Stewart v. Com., 235 Ky. 670, 32 S. W. (2d) 29, 32.

The statements of deceased to Sanders and others cannot be regarded as dying declarations, as they were not shown to have been made by him in extremity, when at the point of death, and when every hope of recovery was gone, every motive to falsehood was silenced, and his mind was induced by the most powerful considerations to speak the truth. Petty v. Com., 178 Ky. 483, 199 S. W. 20.

We have in the Stewart case, supra, recently reviewed and restated, the general rules controlling the admissibility of statements of an injured party when offered as part of the res gestae or as dying declarations, and the reader desiring to review them is referred to it.

The appellant complains of the refusal of the court to permit Dr. Byers to answer a certain hypothetical question. The elimination of the statement of the decedent to Sanders and others as incompetent makes it unneccessary to give consideration to this complaint. He was not entitled to a peremptory at the close of the evidence for the commonwealth. The injuries, inflicted upon deceased were described, and the extent, nature, and immediate result thereof, were amply shown by the evidence, and, coupled with his admission to the deputy sheriff and others that he inflicted the same upon deceased, were sufficient to place the burden of proof on defendant as to his right of self-defense, and to authorize the submission of the case to the jury. Shepherd v. Com., 236 Ky. 292, 33 S. W. (2d) 4, and cases cited; Bourne v. Com., 234 Ky. 842, 29 S. W. (2d) 561; Simmons v. Com., 207 Ky. 570, 269 S. W. 732.

It is alleged in the indictment that the injuries were inflicted upon deceased by the appellant and his companion by the use of ''knucks, black-jack or club, a deadly weapon, a further description of the instrument to the grand jury unknown.'' The appellant admitted that the

instrument used by him was a pistol. It is insisted that, inasmuch as the indictment alleges the injuries inflicted upon deceased were inflicted with "knucks, blackjack or club" and the evidence showed it was done by striking him with a pistol, this was a fatal variance, and that therefore he was entitled to a peremptory instruction. The pistol as used by accused was a deadly weapon in the same sense as a black-jack or club, and its use produced the same result. The fact that the pistol could have been used in another way which would have been equally as fatal in its effects, does not necessarily confine its use to that other particular way. Wharton's Criminal Law (9th Ed.) vol. 1, sec. 519; Bishop's New Criminal Procedure, sec. 65, subsec. 5; State v. Smith, 32 Me. 369, 54 Am. Dec. 578; Dukes v. State, 11 Ind. 557, 71 Am. Dec. 370.

A pistol when used as a club or bludgeon, may or may not be per se a deadly weapon. Therefore it is safer for the court by an instruction to define a deadly weapon, in substance: "If the jury believe from the evidence beyond a reasonable doubt that the pistol described in the evidence was used as a club as described in the indictment, was such an instrument as was reasonably calculated to produce death when used by a person of defendant's physical strength, and in the manner in which it was used by him on the occasion in question, and when so used by defendant in striking and killing deceased, they will in that event, be authorized to find that said pistol was a deadly weapon within the meaning of the law." Burgess v. Com., 176 Ky. 326, 195 S. W. 445; Riggs v. Com., 33 S. W. 413, 17 Ky. Law Rep. 1015. But the injuries in this case were fatal when the pistol was used as a club; the failure of the court to instruct the jury as indicated was not prejudicial to appellant.

It was incumbent upon the court to give correctly to the jury the whole law of the case, and appellant was not required to offer any instructions or to object to the instructions given. His rights were fully preserved when in his motion and grounds for a new trial he raised the point that the instructions did not present the whole law of the case. Thomas v. Com., 146 Ky. 790, 143 S. W. 409; King v. Com., 187 Ky. 782, 220 S. W. 755.

Instructions 1 and 2 follow the indictment in its description of the instrument alleged to have been used by appellant and Oscar Vittitoe in the infliction of the

mortal wound upon deceased, but the court in addition used this phrase, "or with some other instrument." This phrase should be left out of the instructions 1 and 2.

Complaint is made in brief of counsel of certain argument of the commonwealth's attorney. It is not made to appear by a bill of exceptions or otherwise, except on motion and grounds for a new trial, that the argument, if made, was objected to, and therefore the appellant is in no position to complain of it on this appeal. We have so often stated this rule that we do not deem it necessary to cite authority to sustain it.

For the error committed in admitting the statements of deceased as narrated by Sanders and others, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.