124 So.2d 466

**Roy SHANEYFELT**

v.

**STATE.**

**7 Div. 617.**

Court of Appeals of Alabama.

Nov. 15, 1960.

Roy McCord, Gadsden, for appellant.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant, Roy Shaneyfelt, has been adjudged guilty of manslaughter in the first degree, he having been indicted for murder in the first degree. The party alleged to have been killed was Mary Shaneyfelt, the wife of the appellant.

In June 1959, Mary Shaneyfelt died. Mr. Robert Johnson, a State toxicologist, testified that Mrs. Shaneyfelt's death was, in his opinion caused by a subdural hydroma, which is the accumulation of fluid between the first and second covering of the brain. Mr. Johnson testified that there was a rough-cut laceration about an inch and a half in length across the forehead. The photograph of deceased shows that this laceration ran horizontally across the forehead. Mr. Johnson observed other bruises over the body and in his opinion these bruises varied in age from five days to a few hours. It was Mr. Johnson's opinion that the subdural hydroma was the result of the blow on the head that caused the cut on the forehead, and this cut was caused by a blunt instrument striking Mrs. Shaney-

felt's head. According to Mr. Johnson the cut could have been caused by a blow struck with a walking stick.

On cross-examination Mr. Johnson testified that he knows of no way the age of a subdural hydroma could be determined; that it can be caused by a relatively light blow or bumping of the head received hours or weeks before the ensuing death. It was possible that the subdural hydroma suffered by Mrs. Shaneyfelt could have been caused by falling against an object, though in his opinion the blow resulted from something striking Mrs. Shaneyfelt's head.

On further cross-examination, Mr. Johnson testified that his examination showed that Mrs. Shaneyfelt's blood alcohol level was 0.39 which indicated that she had been very drunk prior to her death.

J. R. Beauchamp, a witness for the State, testified that during the afternoon of the day that Mrs. Shaneyfelt died, he had been at the Shaneyfelt's installing a generator in Mr. Shaneyfelt's automobile. When he first started working on the automobile, around 4 p. m., Mr. and Mrs. Shaneyfelt had been sitting out in the yard. He had heard no quarreling or disagreements between them. Mr. Shaneyfelt came over and sat in the automobile while he was working on it. About 10 or 15 minutes later Mr. Beauchamp went to the other side of the car to get a tool and noticed Mrs. Shaneyfelt sitting on the back steps mopping her forehead which was bleeding. Mr. Beauchamp walked over to Mrs. Shaneyfelt and asked her what was the trouble. Over the defendant's objection that any statement made by Mrs. Shaneyfelt was out of the hearing and presence of the defendant, and was not a part of the res gestae, and numerous other grounds, the witness was permitted to answer, "She said Roy hit her." The court also overruled the defense motion to exclude the above answer.

The next evidence pertaining to Mrs. Shaneyfelt is to the effect that she was observed on the couch in the Shancyfelt home, though how she got there was not shown

by the evidence. About 11 o'clock that night she was taken to a hospital and died.

The State also introduced evidence that the appellant used a walking stick, and during the afternoon in question had waived his walking stick at a man in the yard whom he said had tried to rob him.

A photograph of the steps on which Mrs. Shaneyfelt was sitting when observed by Mr. Beauchamp shows that these steps, which led into the house, are open steps with no hand rail, the treads, five in number, appearing to be 2 x 10 boards. At the foot of the steps there is a door mat of a type made out of old automobile tires.

All of the State's witnesses who were present in the Shaneyfelt's yard on the afternoon in question testified to the effect that during the time they were there Mrs. Shaneyfelt was "staggering drunk" or "very drunk."

Testifying in his own behalf the appellant denied that he had at any time struck his wife during the day in question, or that there had been any disagreement between them. He claimed that when he first saw his wife she was on the couch in the house when he returned from a short automobile trip.

We think it can be fairly inferred from the evidence that both Mr. Shaneyfelt and Mrs. Shaneyfelt were consuming alcoholic beverages on the afternoon of the night of her death.

■ We pretermit consideration of the sufficiency of the evidence to support the verdict and judgment of guilty, though admittedly it is a very close question. We do this for the reason that clearly this judgment must be reversed because of the ruling permitting the State's witness, Beauchamp, to testify over defendant's well-grounded objection that the deceased had stated to him, in reply to his inquiry as to what had happened to her that, "She said Roy hit her." Under Mr. Beauchamp's testimony he had heard no commotion of any sort between Mr. and Mrs. Shaneyfelt.

Mr. Shaneyfelt had been sitting in the automobile some 10 to 15 minutes before Mr. Beauchamp observed Mrs. Shaneyfelt sitting on the back steps. Under this testimony it must therefore be concluded that at least 10 to 15 minutes had elapsed, at a minimum, between the time Mrs. Shaneyfelt received her injury, and the time when she made her statement.

The statement could not have been admitted as a dying declaration, since no predicate along these lines was attempted to be laid.

Likewise the statement was not admissible under the theory that defendant's silence in the face of Mrs. Shaneyfelt's accusation amounted to an admission of guilt.

According to the witness Beauchamp, the appellant was 20 feet away when he talked to Mrs. Shaneyfelt. It is therefore quite speculative as to whether Beauchamp's conversation with Mrs. Shaneyfelt was within the hearing of the appellant, and the burden was upon the State to show such a condition. We observe here that in view of later testimony to the effect that the appellant was hard of hearing increases this speculation. Furthermore, the State made no effort to show that the appellant remained silent. As stated above, there was a defense motion to exclude the evidence as to Mrs. Shaneyfelt's answer. As stated in Rowlan v. State, 14 Ala.App. 17, 70 So. 953, 954, "Silence in the face of accusation is the evidentiary fact, and not the accusation. The court erred in overruling the objection to the question and the defendant's motion to exclude the answer."

The only other theory on which Mrs. Shaneyfelt's statement could be admissible is that it was part of the res gestae.

To be part of the res gestae statements must be impelled by the main transaction, and so spontaneously expressed as to be considered a part thereof. The main transaction must be the sole cause of the statement. The fact that Mrs. Shaney-

felt's statement was not made for some 10 to 15 minutes after the time of her injury in itself casts some doubt on the admissibility of the statement because of the lapse of time. However, where a statement is made in response to a question, it cannot be said to originate solely from and to be impelled by the main transaction, for the question is the thing that originates the statement, and not the main transaction. Louisville & N. Railroad Co. v. Pearson, 97 Ala. 211, 12 So. 176; Richmond & Danville Railroad Co. v. Hammond, 93 Ala. 181, 9 So. 577; Shiflett v. State, 38 Ala.App. 662, 93 So.2d 523. Thus Mrs. Shaneyfelt's statement as related by the witness Beauchamp, cannot be considered as admissible as a part of the res gestae and thereby removed from the hearsay rule which would ordinarily prevent its admission. The court therefore erred in its ruling in the premises.

It cannot be denied that the admission of this evidence was harmful to the appellant. In fact, if this inadmissible evidence be removed, then the State's case is indeed entirely dependent upon surmise, guess work, and speculation.

Reversed and remanded.