THE STATE OF OHIO, APPELLANT, *v.* WALLACE, APPELLEE.

[Cite as State *v.* Wallace (1988), 37 Ohio St. 3d 87.]

(No. 87-1155—Submitted March 2, 1988—Decided June 8, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Christian J. Schaefer, James E. Applegate* and *James E. Butler,* for appellant.

*James A. Vogele,* for appellee.

H. BROWN, J. The out-of-court statements made by Tangy to Polly Partin are hearsay. The issues in this case are whether Tangy's statements qualify as excited utterances for pur-

poses of Evid. R. 803(2), and whether the inability, at trial, to establish the testimonial competency of a child declarant affects the admissibility of the child's out-of-court declarations. We hold that Tangy's statements fit within the excited-utterance exception to the hearsay rule, and that the inability to establish the competency of a child declarant does not affect the admissibility of the declarations for purposes of Evid. R. 803(2).

### I

Evid. R. 803(2) defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The admissibility of such statements does not depend upon the availability of the declarant as a witness. Evid. R. 803.

The circumstances surrounding an excited utterance—a startling event, a statement relating to that event, a declarant under the stress of the event—do not allow the declarant a meaningful opportunity to reflect on statements regarding the event. Without opportunity to reflect, the chance that a statement is fabricated, or distorted due to a poor memory, is greatly reduced. This is the rationale for allowing an excited utterance into evidence.[2]

[2] See 6 Wigmore, Evidence (Chadbourn Rev. 1976) 195, Section 1747 ("This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and

The excited-utterance exception is essentially a codification of Ohio common law governing spontaneous exclamations.[3] At common law, this court applied a four-part test in determining what constituted a spontaneous exclamation:

"(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,

"(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

"(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and

"(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." *Potter* v. *Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E. 2d 140, paragraph two of the syllabus (followed and approved in *State* v. *Duncan* [1978], 53 Ohio St. 2d 215, 7 O.O. 3d 380, 373 N.E. 2d 1234, paragraph one of the syllabus).

Elements one, three, and four of the *Potter* test are clearly satisfied in

---

uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or at least as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."); 4 Louisell & Mueller, Federal Evidence (1980) 491-492, Section 439 ("Reactive statements of this nature are considered trustworthy for two reasons: One is that the stimulus leaves the declarant, for the moment, incapable of fabrication. The other is that the memory of the declarant is fresh, since the impression made by the stimulus has not yet passed out of mind.").

[3] See Staff Note to Evid. R. 803. The excited-utterance exception is part of a more generalized hearsay exception known at common law as *res gestae* (literally, "things done"). See McCormick, Evidence (3 Ed. Cleary Ed. 1984) 835, Section 288. The Ohio Rules of Evidence, adopted in 1980 and patterned after the Federal Rules

of Evidence, differentiate categories of *res gestae*. See Staff Note to Evid. R. 803(1) ("Spontaneous exclamations (*res gestae* utterances) are divided into two categories: present sense impression and excited utterance * * *."); see, also, Markus, Trial Handbook for Ohio Lawyers (2 Ed. 1982) 541-544, Section 315 ("* * * virtually every Ohio common law decision applying that phrase [*res gestae*] can be classified within one of the eight non-hearsay definitions (Evid. R. 801(D)) or one of the 27 expressed hearsay exceptions (Evid. R. 803-804))." *Id.* at 541-542. For the sake of clarity, it is better to avoid the use of the generalized phrase *res gestae* when referring to a distinct exception such as excited utterances. See Lilly, Evidence (2 Ed. 1987) 243, note 3, Section 7.9 ("Unfortunately, the res gestae label is sometimes indiscriminately applied to hearsay declarations that fit within the exceptions for statements of excited utterance, present sense impression, physical condition, or state of mind. * * * The imprecision of the term, coupled with careless usage by the courts, has been a source of perplexity for students and lawyers."); see, also, McCormick, *supra,* at Section 288.

this case: the physical assault was a startling occurrence, Tangy's statements related to the assault, and Tangy, the victim, had the opportunity to personally observe her assailant. The element at issue is whether Tangy's declarations were made before there had been time for the nervous excitement caused by the assault to lose its domination over her reflective faculties.

A

The standard for reviewing decisions of the trial judge on excited-utterance exceptions was set forth by Judge Taft in *Potter, supra,* at 500, 55 O.O. at 394, 124 N.E. 2d at 146-147:

"It is elementary that the trial judge is to decide those questions of fact which must be decided in order to determine whether certain evidence is admissible. * * * If his decision of those questions of fact, as reflected in his ruling on the admissibility of * * * [the] declaration, was a reasonable decision, an appellate court should not disturb it."

In the present case, the trial judge found that Tangy's declarations met the requirements necessary to gain admission as excited utterances. Our task is to decide whether that was a reasonable determination.

B

The fact that approximately fifteen hours passed from the assault to the time of the declarations is not dispositive. "The doctrine of *res gestae,* as applied to exclamations, should have its limits determined, not by the strict meaning of the word 'contemporaneous,' but rather by the causal, logical or psychological relation of such exclamations with the primary facts in controversy." *State* v. *Lasecki* (1914), 90 Ohio St. 10, 106 N.E. 660, paragraph three of the syllabus. See *State* v. *Duncan, supra* (two-hour interval); *State* v. *Rohdes* (1986), 23 Ohio St. 3d 225, 23 OBR 382, 492 N.E. 2d 430; accord *Bake* v. *Indus. Comm.* (1939), 135 Ohio St. 627, 15 O.O. 7, 22 N.E. 2d 130; *Dugan* v. *Indus. Comm.* (1939), 135 Ohio St. 652, 15 O.O. 17, 22 N.E. 2d 132, paragraph one of the syllabus; *Stough* v. *Indus. Comm.* (1944), 142 Ohio St. 446, 27 O.O. 378, 52 N.E. 2d 992, paragraph one of the syllabus ("[a] declaration or statement, to be admissible as part of the *res gestae,* is not required to be exactly simultaneous with the primary fact in controversy, but it must be a *spontaneous* or an *impulsive* declaration or statement and not the mere narration of a past transaction"); *Schmitt* v. *Doehler Die Casting Co.* (1944), 143 Ohio St. 421, 28 O.O. 366, 55 N.E. 2d 644. Each case must be decided on its own facts. *State* v. *Duncan, supra,* at 219-220, 7 O.O. 3d at 383, 373 N.E. 2d at 1237 ("* * * it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation").

The evidence in this case is that Tangy was unconscious, with intermittent periods of consciousness or semiconsciousness, throughout the fifteen-hour period between the assault and her statements. A period of unconsciousness, even an extended period, does not necessarily destroy the effect of a startling event upon the mind of the declarant for the purpose of satisfying the excited-utterance exception to the hearsay rule.[4] Tangy's unelicited statement upon awakening—"[Y]ou

---

[4] See Louisell & Mueller, *supra,* at 506, Section 439 ("Continuing emotional or physical shock, loss of consciousness, persistent pain or unabated fright, isolation, and other factors may prolong the impact of a stressful event, making it proper to resort to Rule

know he hurt me"—indicates that the excitement of the assault was still dominating her thoughts.

Many courts have admitted declarations made after a significant period of unconsciousness or semi-consciousness. See *Britton* v. *Washington Water Power Co.* (1910), 59 Wash. 440, 110 P. 20 (declarant was unconscious for five or six days, then semi-conscious for two or three days, before regaining consciousness and making declaration); *Guthrie* v. *United States* (C.A.D.C. 1953), 207 F. 2d 19 (declaration made eleven hours after a brutal assault when the declarant was found in a "half-way unconscious" condition); *Davis Transport* v. *Bolstad* (Tex. Civ. App. 1956), 295 S.W. 2d 941 (declaration made two and one-half to three hours after accident rendered declarant unconscious, even though declarant experienced brief periods of consciousness during that time); see, generally, Annotation, Admissibility, as Part of Res Gestae, of Accusatory Utterances Made by Homicide Victim after Act (1965), 4 A.L.R. 3d 149, 194, Section 15. The record in this case contains no evidence that, during her intermittent periods of consciousness or semi-consciousness, Tangy had a meaningful opportunity to reflect on the assault.

### C

The defendant-appellee stresses the fact that Tangy's statements were elicited, in part, by questioning. The cases considering this problem cannot all be reconciled. However, we are most persuaded by those decisions which find admissibility where the questioning does not negate the spontaneity of the declaration.

For example, in *State* v. *Burns* (1987), 524 A. 2d 564, 566, the Rhode Island Supreme Court admitted declarations by an eleven-year-old in a sexual assault case on the following facts:

"When Mrs. Burns, Ann's mother, came home after the episode was over, she thought the pair looked 'suspicious.' She wondered why the child was already in her pajamas; yet when she asked her daughter, her daughter gave no reason.

"The defendant left the house within minutes of Mrs. Burns' arrival. Her mother asked Ann again what was the matter, and this time, as the child began to speak, her eyes filled with tears and she hesitantly related the details of the assault."

In *State* v. *Watson* (1976), 242 N.W. 2d 702, 704, the Iowa Supreme Court held:

"The fact that Miss Berry made her statements in response to Six's inquiry asking what was wrong does not necessarily rob them of their spontaneity. See *State* v. *Smith,* 195 N.W. 2d 673, 676 (Iowa 1972); *Gibbs* v. *Wilmeth,* 261 Iowa 1015, 1024, 157 N.W. 2d 93, 98-99 (1968). The question was a most natural one under the circumstances. It was not calculated to elicit information which would otherwise have been withheld. It did not render the response inadmissible."

Similarly, the Utah Supreme Court admitted declarations given in response to questions, observing:

"Defendant also argues that the

---

803(2) despite long lapses of time. Sound decisions have found lapses of such dimension insignificant when it comes to statements by victims of brutal or terrifying crimes, and by victims of kidnap or sexual assault, particularly when the victims are of tender years."). Lilly, *supra,* at 240, Section 7.9 ("* * * if a declarant makes the statement as he regains his faculties after a period of unconsciousness or extreme shock, the passage of several or more hours between the exciting event and the statement usually is not fatal to admissibility").

girl's statements were not spontaneous since they were made in response to specific questions. Again, statements made in response to questions may still be under the stress of the event. As stated in *Johnston* v. *Ohls,* 76 Wash. 2d 398, 457 P. 2d 194 (1969):

" 'The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication; intervening actions, or the exercise of choice or judgment.' " *State* v. *Kaytso* (1984), 684 P. 2d 63, 64.[5]

In *United States* v. *Glenn* (C.A.D.C. 1972), 473 F. 2d 191, declarations made in response to these questions—"What happened?", "Who did it?", "Who is 'he' and what did he do?", "Where does he live?" and "What did he do to you?"—were held admissible as excited utterances.

In Ohio, declarations given in response to questioning have been admitted pursuant to a number of lower court decisions. In *State* v. *Evans* (Apr. 27, 1987), Butler App. No. CA86-09-130, unreported, the admitted declarations were made in response to these questions: "What's the matter Kristen?", "[H]ow honey[?]", "[W]hat else happened[?]", "[W]hat did he do to you[?]" and "[W]hat else[?]" In *State* v. *Silvis* (Jan. 31, 1986), Erie App. No. E-85-12, unreported, the declarations of a child who witnessed a physical assault on her brother were admitted pursuant to the testimony of her grandmother: "I asked her why Marshall was crying and she says, he flew against the wall, and I said, you know, like, who flew him against the wall? She said Dave." Similarly, in *State* v. *Dickerson* (1977), 51 Ohio App. 2d 255, 5 O.O. 3d 377, 367 N.E. 2d 927, an affirmative answer to the question, "Did he shoot you, man?", was admitted as an excited utterance.[6]

Admittedly, courts have taken dif-

---

[5] See, also, *State* v. *Elzie* (La. 1977), 351 So. 2d 1174, 1175 ("The witness, a Mrs. Wright, testified that shortly after the incident the rape victim came to her home, frightened and crying hysterically. The witness said: 'And I kept asking her what was wrong. And she said, nothing, at first. And I just kept asking her. And she said: May I use your telephone? And I said: Well, what's wrong, [name of victim]. And then she told me. She said: *Robert raped me.* * * *' [Emphasis added.]"); *State* v. *Daniels* (Minn. 1986), 380 N.W. 2d 777 (declarations admitted in response to questions: "Do you want to tell me what happened?" and "Who started the fire?"); *Haggins* v. *Warden, Fort Pillow State Farm* (C.A. 6, 1983), 715 F. 2d 1050 (declarations made in response to question, "Who hurt you?"); *State* v. *McLain* (1952), 74 Ariz. 132, 135, 245 P. 2d 278, 281 ("Defendant * * * contends that because the utterance was forced out, by the continual prodding of Mrs. Vail when she asked Maria, 'you *must* tell us what happened', and since some time elapsed after the alleged event occurred, the utterance should have been inadmissible. Considering the prosecutrix's age and the excitement under the circumstances, it is not unreasonable that Mrs. Vail would ask Maria what had happened."); *State* v. *LaClair* (1981), 121 N.H. 743, 747, 433 A. 2d 1326, 1330 ("Approximately one hour after the alleged rape, the prosecutrix's mother telephoned her daughter at the apartment where the incident allegedly occurred. The mother testified that the prosecutrix was crying, and she asked her daughter what was wrong. The prosecutrix responded that the defendant had raped her."); *State* v. *Roy* (1983), 214 Neb. 204, 333 N.W. 2d 398 (declarations made in response to question, "Who hurt you?").

[6] See, also, *State* v. *Boston* (Mar. 2, 1988), Summit App. No. 13107, unreported (mother asked her crying daughter what was wrong); *State* v. *Negolfka* (Nov. 19, 1987), Cuyahoga App. No. 52905, unreported; *State* v. *Branham* (Aug. 20, 1987),

ferent approaches to the admissibility of declarations (as excited utterances) given in response to questioning.[7] However, we think the better view (and the view consistent with the rationale for the excited-utterance exception to the hearsay rule) is that such declarations are admissible provided certain safeguards are met.

Accordingly, we hold that the admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties.

Here, Tangy initiated the interaction with Polly Partin by stating, "[Y]ou know he hurt me." Partin responded by asking questions which were simple and straightforward: "[W]ho hurt you?", "Do you know what happened to you?" and "Do you know the name of the person who hurt you?" Partin's questions served to facilitate Tangy's expression rather than to cause reflection.

Accordingly, it was reasonable for the trial judge to find that the excitement of the assault was still dominant over Tangy's thought processes and that Tangy's statements were the unreflective expressions of her belief.

## II

The appellee argues that, regardless of the excited-utterance exception, Tangy's declarations were inadmissible because, at trial, the prosecution was unable to qualify Tangy as a competent witness.[8]

First, it has long been the common law of Ohio that the testimonial incompetency of a child-declarant does not bar the admission of the child's declarations as excited utterances. *State* v. *Lasecki, supra*, at 20, 106 N.E. at 663 (four-year-old); *New York, Chicago & St. Louis RR. Co.* v. *Kovatch* (1929), 120 Ohio St. 532, 538, 166 N.E. 682, 684 (five-year-old). The overwhelming majority of jurisdictions which have considered this issue are in accord. See, generally, the cases cited in Annotation, Admissibility of Testimony Regarding Spontaneous Declarations Made by One Incompetent to

---

Cuyahoga App. No. 52686, unreported (declaration made during phone conversation); *State* v. *Phalen* (Aug. 4, 1987), Allen App. No. 1-85-46, unreported (for the excited-utterance exception, "[t]he focus is on the circumstances under which the declarant made the statements and not whether they were made in response to a question."); *State* v. *Greaser* (June 19, 1987), Trumbull App. No. 3681, unreported (declarations made in a police interview); *State* v. *Montgomery* (Dec. 31, 1986), Cuyahoga App. No. 50576, unreported (victim-declarant confirmed a witness' description of the alleged attacker); *Bergfeld* v. *New York, Chicago & St. Louis RR. Co.* (1957), 103 Ohio App. 87, 3 O.O. 2d 167, 144 N.E. 2d 483 (declarations made in response to the question whether "that car we kicked back on number 1 hit you?"); *Hodge Drive-*

*It-Yourself* v. *Cincinnati Gas & Elec. Co.* (1950), 90 Ohio App. 77, 44 O.O. 272, 96 N.E. 2d 325 (declaration made in response to question, "What happened?").

[7] See Annotation (1977 and 1987 Supp.), 80 A.L.R. 3d 369; Annotation (1965 and 1987 Supp.), 4 A.L.R. 3d 149, 203, Section 21.

[8] The requirements for competency include the abilities to accurately observe, recall, and relate, the ability to appreciate the duty to testify truthfully, and the existence of personal knowledge of the matter about which the witness testifies. See McCormick, *supra*, at 156, Section 62, and 116, Section 69; *Barnett* v. *State* (1922), 104 Ohio St. 298, 135 N.E. 647; *Hill* v. *Skinner* (1947), 81 Ohio App. 375, 37 O.O. 213, 79 N.E. 2d 787.

Testify at Trial (1982 and 1987 Supp.), 15 A.L.R. 4th 1043, Section 3.

Second, Tangy's ability to accurately perceive and relate facts was never shown to be deficient. Under Ohio law, the competency of individuals ten years or older is presumed, while the competency of those under ten must be established.[9] Efforts to establish Tangy's competency failed because Tangy refused to respond to the prosecutor's questions. Her refusal was not shown to be the result of inability. Rather, the more logical inference is that Tangy (like many children and some adults) suffered a paralyzing fear when placed in a courtroom environment. However, Tangy's ability to "receive just impressions" and "relate them truly" was never tested. She was incompetent because of a *presumption* of incompetency, not a *demonstration* of incompetency.

Third, appellee overlooks the fact that, if we were to require the competency of an infant declarant to be established before allowing the infant's declarations into evidence, then the infant's competency would have to be established as of the time of the declarations. Cf. *Huprich* v. *Paul W. Varga & Sons, Inc.* (1965), 3 Ohio St. 2d 87, 32 O.O. 2d 61, 209 N.E. 2d 390, paragraph one of the syllabus ("[w]here a witness is over ten years of age when he testifies but was under ten at the time of the happenings about which he proposes to testify, the capability of such witness to receive 'just impressions' of such happenings must necessarily be determined as of the time of those happenings"). Tangy's silence at trial does not resolve the issue of her competency at the time she made the declarations.

The most relevant evidence of Tangy's ability to "receive just impressions" and "relate them truly" at the time of the declarations is to be found in the declarations themselves. Here, there was independent testimony from medical professionals establishing that Tangy was bruised, cut, and strangled. Part of Tangy's declaration was that she had been cut with a knife and choked. Tangy's words, in themselves, demonstrate at least a minimal ability to accurately perceive and relate what had happened to her.

Fourth, competency is, in large part, inherently satisfied by the elements required to establish an excited utterance.[10] That a witness have personal knowledge of that which he testifies, Evid. R. 602, is accounted for by part four of the *Potter* test, requiring "that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." *Potter, supra,* paragraph two of the syllabus.

To be competent, a witness must

---

[9] Evid. R. 601 provides in part:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * *."

[10] See McCormick, *supra,* at 858, Section 297 ("Must the declarant meet the tests of competency for a witness? In a modified manner the requirement that a witness have had an opportunity to observe that to which he testifies is applied. * * * On the theory that there is a countervailing assurance of reliability—the requirement of excitement—the other aspects of competency are not applied. Thus an excited utterance is admissible despite the fact that the declarant was a child and would have been incompetent as a witness for that reason, or the declarant was incompetent by virtue of mental illness or the declarant was a spouse of the defendant in the criminal case in which the statement was offered.").

appreciate the duty to tell the truth and possess the ability to recall accurately. These requirements are not relevant to the admissibility of an excited utterance because an excited utterance is made while the declarant is dominated by the excitement of the event and before there is opportunity to reflect and fabricate statements relating to the event. The trustworthiness of the declaration (as being what the declarant actually believes to be true) derives from the lack of opportunity to fabricate, not the moral character or maturity of the declarant.[11] Similarly, the declarant's ability to recall is not an issue because of the requirement that the declaration be contemporaneous with its exciting cause or made while that cause dominates the declarant's thoughts. The credibility and weight of the declarations will, of course, still be judged by the factfinder.

Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for resentencing in accordance with law.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and DOUGLAS, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. While I do not contest the propositions of law announced in the syllabus today, I must express my reluctant dissent. My reticence is not premised upon the strength of the majority opinion or the apparent unpopularity of the result announced by the court of appeals. Instead, it is based upon a genuine concern that my remarks may highlight the tortured application of the hearsay exception found in this case.

For better or worse, this court does not merely write for the result achieved today. A more important function of any court of last resort is that it write for the many cases that will be tried on the morrow. With that maxim in mind, I fear the majority opinion has done the bench and bar a disservice.

The rights to confront one's accuser by way of cross-examination and effective counsel are at the very cornerstone of our Anglo-American system of jurisprudence. These rights are firmly imbedded in our Constitution. Hearsay testimony is generally not admissible because the declarant cannot be confronted or cross-examined. We admit some forms of hearsay, however, because of their inherent reliability. One of these exceptions quite properly applies to a spontaneous or excited utterance.

The case law—until now—urges the greatest of caution with respect to this sort of testimony. The exception applicable to an excited utterance should only be applied where:

(1) there is a statement made relating to a startling event or condition; *AND*

(2) the declarant makes the statement while under the stress of excitement caused by the event or condition.

The Staff Note to Evid. R. 803(2)

---

[11] This is especially so in the case of children. See Wigmore, *supra*, at 223, Section 1751 ("Does the disqualification of *infancy* * * * exclude declarations otherwise admissible? It would seem not; because the principle of the present exception obviates the usual sources of untrustworthiness * * * in children's testimony; because, furthermore, the orthodox rules for children's testimony are not in themselves meritorious * * *; and, finally, because the oath test, which usually underlies the objection to children's testimony, is wholly inapplicable to them * * *.").

provides: "To qualify as an excited utterance consideration must be given to (a) the lapse of time between the event and the declaration, (b) the mental and physical condition of the declarant, (c) the nature of the statement and (d) the influence of intervening circumstances."

In their zeal to overrule the court of appeals and affirm appellee's convictions, my brethren have cited several opinions of this court and of our sundry courts of appeals. None of the cases cited, however, is dispositive. Moreover, many of the cases in the collection of opinions contained in Annotation, Admissibility, as Part of Res Gestae, of Accusatory Utterances Made by Homicide Victim after Act (1965), 4 A.L.R. 3d 149, cited by the majority, contradict the result achieved today.[12]

The majority cites *Stough* v. *Indus. Comm.* (1944), 142 Ohio St. 446, 27 O.O. 378, 52 N.E. 2d 992, for the proposition that a statement is not required to be exactly simultaneous with the fact in controversy for it to be admissible. If the majority would have read further, however, it would have found that *Stough* actually supports a view *directly* contrary to what the majority has imposed. In *Stough,* the decedent had inhaled toxic gases while at work. Later that day, he became sick at home, and began to vomit. His wife asked why he was sick and he replied, "I got too much gas." *Stough, supra,* at 453, 27 O.O. at 382, 52 N.E. 2d at 997. This court ruled the statement was not admissible because the statement was "made in response to questions." *Id.* We noted "his answers amounted only to the narration of a past transaction and were inadmissible as part of the *res gestae,* and that the Court of Appeals was correct in so holding."[13] *Id.*

---

[12] The few cases where the victim's statement was found admissible resulted from *a* question (not a series of questions) made within the briefest of time frames following the incident and then only where there was clear spontaneity. See Annotation, *supra* (4 A.L.R. 3d 149) at 203-205, and cases cited therein.

[13] The majority also relies on *Schmitt* v. *Doehler Die Casting Co.* (1944), 143 Ohio St. 421, 28 O.O. 366, 55 N.E. 2d 644. Once again, it seems the majority has only read the favorable dicta within the case rather than the holding. In this case we ruled "a statement must be shown to constitute more than a mere self-serving narration of a past event." *Id.* at 424, 28 O.O. at 368, 55 N.E. 2d at 646. The court found "no such showing" and excluded the testimony. Other jurisdictions have ruled accordingly. In *Barton* v. *Commonwealth* (1931), 238 Ky. 356, 38 S.W. 2d 218, a victim's statement identifying his assailant was held inadmissible even though the statement was made three to thirteen minutes after the event because the statement was not "a part of the transaction occurring at the time he received his injuries." *Id.* at 359, 38 S.W. 2d at 219. See, also, *Graves* v. *People* (1893), 18 Colo. 170, 32 P. 63; *Reddick* v. *State* (Tex. Crim. App. 1898), 47 S.W. 993.

Several other jurisdictions have recognized as an important factor the fact that an utterance was made in response to questions. See *Woods* v. *State* (1923), 19 Ala. App. 299, 97 So. 179; *People* v. *Westcott* (1927), 86 Cal. App. 298, 260 P. 901; *Herren* v. *People* (1900), 29 Colo. 23, 62 P. 833; *Hunter* v. *State* (1918), 147 Ga. 823, 95 S.E. 668; *State* v. *Charles* (1904), 111 La. 933, 36 So. 29; *State* v. *Hendricks* (1903), 172 Mo. 654, 73 S.W. 194; *People* v. *Sprague* (1916), 217 N.Y. 373, 111 N.E. 1077; *Reddick* v. *State, supra.*

In *State* v. *Williamson* (1919), 145 La. 9, 81 So. 737, a physician asked a wounded man, "Do you realize your condition?" The victim replied, "Yes, he got me." It was held that the victim's statement was not admissible because it was not a spontaneous, voluntary, or impulsive declaration but was "apparently a calm and deliberate response to a question." *Id.* at 12, 81 So. at 738.

In the case before us, a not insubstantial period of time passed between the alleged attack and the time the statement was made—fifteen hours. I agree with the majority that a period of unconsciousness does not necessarily preclude the admissibility of hearsay testimony under the excited utterance exception. Determination of admissibility, however, can only be made after careful scrutiny of the totality of the circumstances. Otherwise, substantial due process rights could be denied.

The direct examination of Polly Partin reveals Tangy's first statement, "[Y]ou know he hurt me," was spontaneous. Partin then asked several seemingly uncoercive questions. Further examination of Partin's testimony, however, reveals her questioning did more than "facilitate" Tangy's expressions. Partin admits, on direct examination, that "it was *sometime* [*sic*] before Tangy could even—she didn't give me a name for *sometime* [*sic*]." (Emphasis added.) The fact Tangy would not reveal the name "for some time" surely indicates Partin was attempting to coax Tangy into talking, and convince her it was all right to identify the assailant. Hence, appellee's identification was the end product of intensive, albeit gentle, interrogation. As in *Stough,* I would find the questioned testimony here was not made while under the stress of excitement caused by the event, for such is plainly the state of record on which the court of appeals ordered a new trial.

Today's holding correctly cites Professor Wigmore to the effect that the hearsay rule is inapplicable to testimony in a situation where an "external circumstance of physical shock * * * may be produced which *stills* the reflective faculties and *removes their control."* (Emphasis added.) 6 Wigmore, Evidence (Chadbourn Rev. 1976) 195, Section 1747. Such testimony is, of course, admissible on the theory that such a response *"made under the immediate and uncontrolled domination of the senses"* (emphasis added) (*id.*) is particularly trustworthy. Nevertheless, it is difficult to conceive how one could seriously suggest that a series of questions to a five-year-old child can properly last over "some time" and yet can fall within Professor Wigmore's carefully crafted definition and the applicable case law on this subject.

Accordingly, I would affirm the court of appeals and accord appellee a new trial premised on procedural due process protections which are incorporated into the Rules of Evidence.

---

In *State* v. *Charles, supra,* the victim's answer to a physician's question, "Before I put my hands on you, who did the shooting?", was held not admissible where it appeared that the statement was given nine or ten minutes after the shooting. The court said that under the circumstances the statement was evidently nothing more than a relation of past events. *Id.* at 935, 36 So. at 30.

In *Shaneyfelt* v. *State* (1960), 41 Ala. App. 130, 124 So. 2d 466, the court held a victim's accusatory utterance was not admissible where it was made in response to a question. The court found the statement originated from a question rather than the transaction.

In *State* v. *Jacobs* (La. 1973), 281 So. 2d 713, the court held a statement in response to a question by a deputy was not admissible although it was spontaneous because it was made in response to a question and was part of a narration.