**Williams v. Williams**
*[Cite as 5 AOA 236]*

*Case No. 89CA004649*
*Lorain County, (9th)*
*Decided July 11, 1990*

*Michael F. Becker, Attorney at Law, 252 Second St., Elyria, OH 44035, for Plaintiffs.*

*Darrel Bilancini, Attorney at Law, 230 Third St., Elyria, OH 44035, for Defendants.*

*D. John Travis, Attorney at Law, The Hanna Bldg., Suite 1142, Cleveland, OH 44115, for Defendants.*

CACIOPPO, J.

Clayton Williams appeals the decision of the trial court granting summary judgment in favor of Frank Edward McGuire and entering judgment in favor of Joshua Williams and Glen Williams.

Diana McGuire and her husband Edward Eugene McGuire, and their two children reside in a home in Sheffield Lake, Ohio. Diana also has a biological son, Joshua, whom her parents, Glen and Georgia Williams legally adopted prior to the incident giving rise to this appeal. Glen, Georgia and Joshua Williams were living in the Sheffield Lake home on the date of the incident.

On April 13, 1986, two families visited the home. One family was Roger and Kim Williams and their three children, Michelle, age eight, Christie, age six, and Clayton, age four. Roger Williams is the son of Glen and Georgia Williams and the brother of Diana McGuire. The other family was Frank Edward McGuire, his wife and adopted son Frank, Jr., age ten. Frank Edward McGuire is the father of Edward Eugene McGuire.

In the afternoon, Frank McGuire, Frank Jr., Joshua Williams, and Michelle, Christie and Clayton Williams walked beyond the Sheffield Lake home property into the woods. Clayton's left eye was permanently damaged by a thorn apple branch. The branch hit Clayton by either Joshua snapping it into Clayton's face or

Michelle snapping it as she ran through the woods.

Clayton and his parents filed an action against Joshua, his adoptive father, and Frank McGuire alleging negligence and loss of consortium. Frank McGuire filed a motion for summary judgment with supporting affidavits.

The plaintiffs filed a brief in opposition with depositions. On August 11, 1989, the trial court granted summary judgment in favor of Frank McGuire.

The matter proceeded to a jury trial on the claims against Joshua and Glen Williams. On August 17, 1989, the jury returned a general verdict in favor of Joshua and Glen Williams. The trial court entered judgment accordingly. The plaintiffs appeal.

### ASSIGNMENT OF ERROR

"I. The trial court erred by granting summary judgment to the defendant, Frank Edward McGuire, because there exists material questions of fact as to whether defendant Frank Edward McGuire breached the duty of supervision to plaintiff Clayton Williams and whether the breach of such duty proximately caused Clayton Williams' injury."

A court reviewing the granting of a summary judgment must follow the standard set forth in Civ. R. 56(C), which provides that before summary judgment may be granted it must be determined that:

"***.

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgments a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United Inc.* (1977), 50 Ohio St. 2d 317, 327.

The trial court found that an issue of fact remained as to whether Frank McGuire volunteered to supervise Clayton and Joshua thereby assuming a duty to control their conduct. Appellants argue that the trial court improperly found that McGuire's duty did not arise through McGuire's special relation with the boys. Since the trial court found issues of fact remained as to whether McGuire had a duty to control the boys' conduct, it is immaterial whether the duty arose out of a special relation or a voluntary undertaking. This argument is not well taken.

Appellants assert that questions of fact remain as to whether McGuire's conduct was the proximate cause of Clayton's injury. Appellants argue that Clayton would not have been injured if McGuire had properly supervised him.

To establish negligence, one must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77; *DiGildo v. Caponi* (1969), 18 Ohio St. 2d 125.

Following *Person v. Gum* (1983), 7 Ohio App. 3d 307, 309 the trial court did not address the issue of whether McGuire breached a duty toward Clayton, finding that even if he did, his negligence was not the proximate cause of Clayton's injury. It is well settled that in order to establish negligence, the act complained of must be the direct and proximate cause of the injury. *Strother v. Hutchison* (1981), 67 Ohio St. 2d 282, 287. For an act to be the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act. *Ross v. Nutt* (1964), 177 Ohio St. 113, 114. To find that an injury was the natural and probable consequence of an act, it must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged act. Id. Where the original negligence of the defendant is followed by the independent act of a third person which directly results in injurious consequences to plaintiff, defendant's earlier negligence may be found to be the proximate cause of those injurious consequences, if, according to human experience and in the natural and ordinary course of events, defendant could reasonably have foreseen that the intervening act was likely to happen. *Taylor v. Webster* (1967), 12 Ohio St. 2d 53, 56. It is not necessary that the defendant should have anticipated the particular injury. *Neff Lumber Co. v. First National Bank* (1930), 122 Ohio St. 302, 309. It is sufficient that his act is likely to result in injury to someone. *Id.*

In the instant case, Clayton was injured when a thorn apple branch hit his eye by the action of either Joshua or Michelle. McGuire could not have reasonably foreseen that Joshua or Michelle would snap a thorn apple branch into Clayton. Clayton's injury was not the natural and probable consequence of McGuire's alleged omission. We conclude that McGuire's conduct was not likely to result in injury to Clayton, and that the events causing Clayton's injury were too remotely connected with McGuire's conduct to support a finding of proximate cause.

The first assignment of error is overruled.

### ASSIGNMENT OF ERROR

"II. The trial court erred by admitting hearsay testimony in the defendant Joshua Williams' case in chief."

Appellants maintain that the trial court committed reversible error by permitting hearsay testimony from Diane McGuire and Georgia Williams made by Christie Williams.

At trial, Diane McGuire testified as to the occurrences after the children returned from the woods. She testified as follows:

"A. *** .

"Michelle came running back in, came down and plopped down and kicked her shoes off, and sat there giggling.
"*** .

"A.Then a couple seconds later, I finished picking up the pictures and I was coming to the kitchen and I heard Clay crying. They come in with Clay; Joshua, Clay, Christie and Ed and Ed's father.

"Q. What happened after that?

"A. They come in with Clay. Clay was crying, and Michelle jumped up and said, 'Josh did it. Josh did it.'

"MR. BECKER: Object. Move to strike, and ask the Jury to disregard.

"THE COURT: I'm going to let that in.

"Q. All right. Slow down a little bit.

"When Clay and Josh came in, Michelle was in the dining room, she jumped up and said, 'Josh did it. Josh did it'?

"MR. BECKER: Same objection.

"THE COURT: Overruled.

"Q. And Clay said the same thing, and Christie hollered, 'No.'

"MR. BECKER: Object.

"Q. What did Christie say?

"A. She said, 'No, Josh--'

"MR. BECKER: Object, Your Honor. No foundation.

"Q. Once again, what did Christie say?

"A. Christie said, 'No, Josh didn't do it.'"
"*** ."

The appellees contend that the statements made by Christie were properly admitted into evidence under Evid. R. 803(2), which states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"*** .

"A statement relating to a starling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
"***."

The rationale for allowing an excited utterance into evidence was set out in *State v. Wallace* (1988), 37 Ohio St. 3d 87, 88 as follows:
"*** .

"The circumstances surrounding an excited utterance--a startling event, a statement relating to that event, a declarant under the stress of the event--do not allow the declarant a meaningful opportunity to reflect on statements regarding the event. Without opportunity to reflect, the chance that a statement is fabricated, or distorted due to a poor memory, is greatly reduced. *** "

The Supreme Court of Ohio has applied a four-part test in determining what constitutes a spontaneous exclamation.

"*** (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective' faculties and thereby make his statements and declarations, the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such starling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." *Potter v. Baker* (1955), 162 Ohio St. 488, paragraph two of the syllabus.

Elements one and three of the *Potter* test are clearly satisfied in this case: Clayton's eye injury was the startling occurrence and the statement related to who injured Clayton. The elements at issue are whether Christie's declarations were made before there had been time for the nervous excitement caused by the injury to lose its dominion over her reflective faculties and whether Christie had an opportunity to observe personally the matters asserted in her statement.

An appellate court should not disturb the trial court's decision in determining whether a

declaration should be admissible under the spontaneous exclamation exclusion to the hearsay rule, where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision. *Id.* at 500.

The evidence in this case is that Christie was in the woods when her brother was injured. She walked into the house with her injured and crying brother. Michelle jumped up and said, "Josh did it, Josh did it." In response, Christie "hollered, No Josh didn't do it." Christie's uncoaxed statement indicates that the excitement of Clayton's injury was still dominating her thoughts. The facts suggest that Christie did not have a meaningful opportunity to reflect on the injury and was still under the influence of the event.

Appellants argue that there was no evidence to establish the fourth element of the *Potter* test - that Christie had an opportunity to observe personally whether Joshua injured Clayton.

At the outset, we note that appellants have not provided a complete record of the testimony presented at trial. Appellants did not submit testimony of any of their witnesses in their case in chief, including the testimony of Christie. The record before us indicates that Christie and Joshua were in the woods when Joshua was injured. Under these circumstances, this court will not substitute its judgment for that of the trial court who heard all the testimony.

The statement made to Diane McGuire appears to have the indicia of trustworthiness. We cannot say that the trial court's decision to admit it into evidence, pursuant to Evid. R. 803(2) was unreasonable.

The statements made by Christie to Georgia Williams were similar to those made to Diane McGuire and thus merely cumulative.

The second assignment of error is overruled.

Judgment of the trial court is affirmed.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

*Judgment affirmed.*

QUILLIN, P. J., and CIRIGLIANO, J., concur.