THE STATE OF OHIO, APPELLEE, *v.* DICKERSON, APPELLANT.

[Cite as State v. Dickerson (1977), 51 Ohio App. 2d 255.]

(No. 35716—Decided May 19, 1977.)

*Mr. John T. Corrigan,* for appellee.
*Mr. Robert P. DeMarco,* for appellant.

DAY, C. J. Eddie Dickerson, defendant, was indicted on one count of first degree murder, R. C. 2901.01; one count of murder in the perpetration of robbery, R. C. 2901.01; and one count of armed robbery, R. C. 2901.13 (the indictments were returned before the criminal code revisions of 1974). The jury acquitted defendant on the second count, found him guilty of the lesser included offense of second degree murder under the first count, and guilty of armed robbery under the third count. Defendant's appeal assigns four errors.[1] For reasons assessed below, none are well taken.

We affirm.

---

[1]Assignments of Error:

"I. The trial court committed prejudicial error by admitting hearsay evidence.

"II. The trial court's admission of out-of-court statements violated defendant's right to confrontation as guaranteed by the Sixth and Fourteenth Amendments of the U. S. Constitution and by Section Ten, Article One of the Ohio Constitution.

## I.

At trial, Ralph Crenshaw testified that on November 2, 1973, decedent (Willie Jones), Dennis Allen, and he were walking out of the Family Beverage Store and onto the sidewalk when they were approached by defendant. Defendant pulled a pistol from his "waistline," pointed it at the decedent and said, "Give it up." Allen and Crenshaw kept walking. There was a gunshot. Crenshaw looked back towards the defendant and decedent. He saw the latter jump, hold his stomach, and say, "Oh, please, don't do that * * *. Here, take it all." Crenshaw saw defendant take money that Jones handed him from his own pocket. Both Crenshaw and Allen testified that they saw defendant standing near the decedent with a gun in his hand. Several other witnesses heard a gunshot and through a window saw defendant. At least one saw a gun in his hand. Crenshaw testified that two other men came out of the store, searched decedent, and went around the corner with defendant.

Crenshaw immediately approached Willie Jones and asked, "Did he shoot you, man." Counsel for defendant objected but the court overruled the objection on the ground that the response was part of the *res gestae.* Crenshaw then testified that decedent said, "Yes, he stung me."

During the cross-examination of Crenshaw, Crenshaw was asked whether there could have been another gun in the area besides that seen with defendant. Crenshaw answered, "Could have been." Counsel for defendant then asked Crenshaw whether many people in the neighborhood carried guns, whether Crenshaw, Willie (decedent), Dennis, "Freddie," or Mr. Burton carried guns. Objections to all these questions were sustained, and counsel for defendant was instructed "* * * to resist [*sic*] from this type of examination."

"III. The trial court committed prejudicial error by limiting the scope of defendant's cross-examination.

"IV. The verdict is contrary to the manifest weight of the evidence."

This recital of the evidence eptomizes the facts material to the appeal.

## II.

The first two assignments of error raise substantially the same issue. It is the only one of sufficient novelty to warrant a published opinion. That issue is the admissibility of excited utterances. The trial court admitted the statement as part of the *res gestae*. *Res gestae* is a nebulous phrase. "Excited utterances," in our view, is a better term because its perimeters are more easily perceived. And, as a descriptive phrase, it more nearly characterizes the crucial words spoken in this case.

Excited utterances are admissible into evidence as an exception to the hearsay rule when: (a) there is an occurrence or event "* * * sufficiently startling to render normal reflective thought processes of an observer inoperative," and (b) "* * * the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." See McCormick on Evidence 704, Section 297 (2d ed. 1972). This exception to the hearsay rule is premised on the "special reliability" provided by the excited condition which results in the "suspension" of the declarant's powers of thought and impedes the probability of "fabrication." *Id.* Thus, the admissibility of such utterances depends upon the answers to two basic questions. Was the time between the exciting event and the declaration short enough to rebut the probability of calculation? Were the circumstances such that the excitement induced was a likely control producing spontaneity and resultant reliability? An ancillary issue, on the facts of this case, is whether a declaration that comes in response to a question is rendered inadmissible simply because elicited by a question. A number of cases in other jurisdictions have held that the fact that the utterance is a response to a question does not necessarily render it inadmissible if otherwise evidentially competent.[2] Of course, whatever

---

[2] See annotation, 4 A. L. R. 3d 149, 203-205, and Supp., at page 11 (Oct., 1976); *People* v. *Costa* (1953), 40 Cal. 2d 160, 168-169, 252 P. 2d 1,

prompting may quicken the response is evidence bearing on spontaneity and, consequently, relevant to credibility.

However, credibility is only a slight problem in this case. The decedent was shot in the stomach. Moments later and immediately after the defendant had fled the scene, the witness Crenshaw approached decedent. He (Crenshaw) asked, obviously referring to defendant, ''Did he shoot you, man?'' Decedent's response was ''Yes, he stung me.'' Although decedent made his declaration in response to a question, the remark was admissible as an excited utterance because there was close proximity in time between the shooting and the declaration and because, under the circumstances, the statement was almost certainly not a result of reflection or fabrication. For the answer was elicited during a period that had to be intensely exciting. Thus, the reliability of the declaration was certified by those qualities which undergird the policy of the excited utterance exception to the hearsay rule. The trial court did not err in overruling the objections to the question and answer.

The admission of the declaration was not a violation of defendant's Sixth Amendment right to confrontation and cross-examination. It is true that the decedent died shortly after the declaration, and, while we are not evaluating a dying declaration, it is persuasive that such declarations are admissible[a] even though as susceptible to Sixth Amendment challenge as the declaration involved here. In *Pointer* v. *Texas* (1965), 380 U. S. 400, 407, the court noted that, in addition to dying declarations and the testimony of a deceased witness in a former trial:

6; *Guthrie* v. *United States* (D. C. Cir., 1953), 207 F. 2d 19, 22-23; *Commonwealth* v. *Lehman* (1932), 309 Pa. 486, 495, 164 A. 526, 529. No Ohio case has been found which precludes the use of the excited utterance exception to the hearsay rule where t'·' declaration was made in response to a question.

[a]See *Mattox* v. *United States* (1892), 146 U. S. 140, 151-152; *State* v. *Kindle* (1890), 47 Ohio St. 358, 360-361. Query, whether confrontation is an issue when the witness hearing the declaration is available for cross-examination, cf. *State* v. *Kindle, id.*

"* * * There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses.'"

The present case presents one of those "analogous situations."

The first and second assignments of error are not well taken.

## III.

In his third assignment of error, the defendant claims prejudicial error intervened in this case because of court imposed limitations on the scope of his cross-examination.

Some of the questions posed by defense counsel, to which objections were sustained, may have been relevant to the issue of whether defendant fired the lethal gunshot. Others were quite general. Questions on cross-examination about the presence of other weapons at the scene of the shooting may have been in order. However, the relevance of the questions on the facts here may be in doubt.[5] In any event, the error, if there was error, was harmless beyond a reasonable doubt in the light of the overwhelming evidence of defendant's guilt, *Chapman* v. *California* (1967), 386 U. S. 18, 23-24; *Harrington* v. *California* (1969), 395 U. S. 250, 254.

The third assignment of error is not well taken.

## IV.

The fourth and final assignment of error attacks the verdict as against the weight of the evidence. The only conceivable basis for this challenge rests with the fact that some of the evidence is circumstantial. Against this claim is the fact that the evidence is both reasonable and substantial and singular in its thrust.

At the relevant time and place, defendant was seen

---

[4]In the *Pointer* case, the issue of confrontation was raised in an entirely different setting. There the transcript of an uncross-examined witness taken at a preliminary hearing (at which defendant was not represented) was offered and received at the trial on the merits. The Supreme Court held this to be an invasion of the right of confrontation guaranteed by the Sixth Amendment.

[5]See fn. 6.

pointing a gun at decedent and ordering him to, "Give it up." A shot was fired. Decedent was wounded. Defendant was seen standing near him with a gun. Defendant took money from him. No other persons were seen near decedent at the time of the shooting. Immediately after the shooting, defendant fled.[6] With the evidence in this stance, there is no reasonable postulate to support the defendant's innocence. The evidence is irreconcilable with any theory except that of defendant's guilt. See *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 160. The jury found him guilty of second degree murder and armed robbery. The record is legally sufficient as to both.

The fourth assignment of error is not well taken. The judgment is affirmed.

*Judgment affirmed.*

JACKSON and PATTON, JJ., concur.

---

[6] After defendant took decedent's money, subsequent to the shooting, two men exited the store, searched decedent, and joined defendant. But, there was no testimony that any of these men were even in sight when the shooting took place.