The STATE of Ohio, Appellee,

v.

TERRA, Appellant.

[Cite as *State v. Terra* (1991), 74 Ohio App.3d 189.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–398.

Decided May 16, 1991.

*Michael Miller,* Prosecuting Attorney, and *James V. Canepa,* for appellee.

*Dennis Belli,* for appellant.

WHITESIDE, Judge.

Defendant, Arthur Terra, appeals from a judgment of the Franklin County Court of Common Pleas, convicting him of attempted gross sexual imposition, and sets forth the following four assignments of error:

"1. The trial court erred to the prejudice of defendant-appellant in denying his motion to dismiss under R.C. 2945.73 for the failure of the state to bring him to trial within the time stated in R.C. 2945.71.

"2. The trial court erred to the prejudice of defendant-appellant in admitting the affirmative hearsay responses of the alleged child-victim to a series of leading questions posed by her mother where (1) the mother's leading questioning negated the spontaneity of the child's declarations, (2) there was a demonstration, as contrasted with a presumption, of the child's incompetency, and (3) the probative value of the hearsay was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading of the jury.

"3. The trial court erred to the prejudice of defendant-appellant in instructing the jury on the offense of attempted gross sexual imposition and permitting the jury to consider same as a lesser included offense of the offense charged in the indictment.

"4. Defendant's conviction of the offense of attempted gross sexual imposition is not supported by sufficient evidence, and the guilty verdict rendered thereon is against the manifest weight of the evidence."

The evidence indicates that defendant, a friend of the victim's family, had spent the evening at the victim's home watching television and consuming alcohol with the victim's father. When everyone went to bed, defendant was invited to spend the night on the couch in the living room. Some time later, the victim's mother heard the victim whimper and then scream. The mother hurried into the victim's bedroom and discovered defendant kneeling on the victim's bed with his pants unzipped and his belt buckle unfastened. The victim, who was nine years old at the time, suffers from brain damage and cerebral palsy and has serious mental and physical disabilities. The victim's diaper was open on one side, and her genitals were partially exposed. The victim's mother and two police officers who had been dispatched to the scene testified that the girl's vaginal area was somewhat red.

The victim's mother summoned the police while the victim's father restrained defendant from leaving the house. After the police arrived, defendant was arrested and taken in for questioning. The police officer testified at trial that, upon being asked about the allegations that the victim's mother made against him, defendant stated that he had never been in the bedroom

and had never touched the victim. At trial, however, defendant testified that, on the night of the incident, he had just come from the bathroom when he heard the victim whining and that, when he went to see if there was a problem, he observed the victim on her stomach with one arm and leg partially hanging over the side of the bed. Defendant testified that he attempted to turn the victim over onto her back when the diaper "gave way," and he lost his balance and fell onto the bed, whereupon the victim screamed.

Defendant was arrested on October 15, 1989, and was later indicted upon one count of gross sexual imposition. Being unable to post bond, he was held in jail until the commencement of trial. A trial date was scheduled for January 9, 1990, but defense counsel moved for a continuance on that date. The trial was then set for February 18, 1990; however, when defense counsel expressed concern as to the time defendant had spent in jail, the court moved the trial date up to February 5, 1990.

On February 5, 1990, the trial court *sua sponte* ordered the case continued until February 13, 1990. The standardized continuance form reflecting that continuance states, "Judge in Trial." When defendant appeared before the court on February 13, 1990, the court once again ordered a *sua sponte* continuance until March 12, 1990, stating in its continuance entry, "Court in trial, no other courtrooms available."

Trial commenced on March 12, 1990, after the court overruled defendant's motion to dismiss for lack of speedy trial. Defendant was acquitted of the charge of gross sexual imposition but was found guilty of the lesser included offense of attempted gross sexual imposition. From the judgment of conviction, defendant brings the instant timely appeal.

By his first assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the case on the basis that the speedy-trial provisions of R.C. 2945.71 were violated. R.C. 2945.71(C)(2) requires that a person against whom a felony charge is pending be brought to trial within two hundred and seventy days after his arrest. For purposes of computing time, R.C. 2945.71(E) states that " * * * each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days, * * * " which means that an accused held in jail must therefore be tried within ninety days of his arrest date.

Defendant was arrested on October 15, 1989, and, being unable to make bail, was held in jail until trial commenced on March 12, 1990, one hundred forty-nine days after his arrest. Defendant concedes that, pursuant to R.C. 2945.72(H), the twenty-seven-day period from January 9, 1990 to February 5, 1990 is excludable from the ninety-day time limitation as that time period represents the period of the continuance granted on the motion of defense

counsel. Subtracting those twenty-seven days from one hundred and forty-nine actual days leaves a total of three hundred sixty-six speedy-trial days (one hundred twenty-two actual days) from defendant's date of arrest before he was brought to trial.

The trial court, however, denied defendant's motion to dismiss for speedy-trial violations predicated upon the two *sua sponte* continuances ordered by the court. R.C. 2945.72(H) allows for the extension of time within which an accused must be brought to trial during "[t]he period of any reasonable continuance granted other than upon the accused's own motion." This provision includes any reasonable continuance ordered *sua sponte* provided it meets the reasonableness test both as to reason and duration.

The Ohio Supreme Court has expressly stated in *State v. Pudlock* (1975), 44 Ohio St.2d 104, 105–106, 73 O.O.2d 357, 358, 338 N.E.2d 524, 525, that "[t]he provisions of R.C. 2945.71 and 2945.73 * * * are mandatory and must be strictly complied with by the state." (Citations omitted.) Moreover, "practices which undercut the implementation of the 'speedy trial' provisions * * * must not be employed to extend the requisite time periods." *Id.* at 106, 73 O.O.2d at 358, 338 N.E.2d at 525.

Regarding the extension of time for *sua sponte* continuances, the Supreme Court held in *State v. Lee* (1976), 48 Ohio St.2d 208, 209, 2 O.O.3d 392, 393, 357 N.E.2d 1095, 1096:

"The record of the trial court must in some manner affirmatively demonstrate that a *sua sponte* continuance by the court was reasonable in light of its necessity or purpose. Mere entries by the trial court will ordinarily not suffice, except when the reasonableness of the continuance cannot be seriously questioned. Although this burden is contrary to the presumption of regularity generally accorded to trial proceedings, it appears necessary to carry out the purpose of the speedy-trial statutes."

The state argues that, in considering the reasonableness of the continuances, this court must look not only to the language of the entries but also to the after-the-fact explanation given by the trial court in considering the motion to dismiss immediately prior to trial. In denying the motion, the trial judge orally stated that the court ordered the first *sua sponte* continuance because "the court was already in trial, and there were no other judges available at that time" and the second continuance for basically the same reasons. No explanation was offered, however, as to why the after-the-fact "explanations" were not included in the *sua sponte* continuance entries.

We find, however, that the record herein fails to meet the requirements of R.C. 2945.71 *et seq.* The entries of continuance both state that the

judge was already in trial on the scheduled dates; however, the entries fail to indicate whether the judge was in a civil or criminal trial or, if a criminal case, whether the judge then assigned defendant's case for trial before any pending civil cases. Crim.R. 50 states that "[c]riminal cases shall be given precedence over civil matters and proceedings." The mere notation that the case is reassigned to the first available date is insufficient to establish the reasonableness of the continuances. See *State v. Wentworth* (1978), 54 Ohio St.2d 171, 8 O.O.3d 162, 375 N.E.2d 424; *State v. McKinney* (Sept. 26, 1989), Franklin App. No. 89AP–186, unreported, 1989 WL 110846; and *Elmwood Place v. Denike* (1978), 56 Ohio St.2d 427, 10 O.O.3d 528, 384 N.E.2d 707.

█ Likewise, the trial court's more detailed after-the-fact explanation on the record at the commencement of trial does not demonstrate the continuances to be reasonable. First, any explanation should properly have been given prior to the expiration of the statutory time limit. *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571.

Second, the reasons set forth prior to trial by the court are insufficient. As with the continuance entries, the mere circumstance that the judge was already in trial does not establish the reasonableness of the continuances. The judge did not indicate that he gave defendant's case precedence over pending civil matters. Even if we could presume, due to statements made by the trial court, that on the date the first *sua sponte* continuance was ordered the court was involved in a capital murder case, thus making reasonable the first continuance until February 13, 1990, this does not justify the period of the second continuance. In reference to that continuance the trial court stated (not in the entry but only at the time of trial) that, "[t]he Court was in trial and no other courtrooms were available. At that time, the Court continued the case to its next available date which was the 12th of March, this being *the first date of my criminal docket * * *.*" (Emphasis added.) There is no contention that the court was still involved in the capital murder case or any other criminal matter. Rather, the emphasized language suggests that the court did not schedule defendant's case ahead of civil actions, as required by Crim.R. 50.

In this case, defendant was incarcerated from the time of his arrest until the time of trial, a total of four hundred forty-seven speedy-trial days (one hundred forty-nine actual days). Excluding the twenty-seven-day period (eighty-one speedy-trial days) representing the continuance granted at defendant's request means defendant's trial did not commence until ninety-six speedy-trial days (thirty-two actual days) after the expiration of the speedy-trial time period. This is a length of time which is not facially reasonable. Accordingly, the record does not establish that the trial court's *sua sponte*

extension of the date of defendant's trial was a reasonable continuance under R.C. 2945.72(H), and the first assignment of error is well taken.

By his second assignment of error, defendant contends that the trial court erred in permitting the victim's mother to testify concerning the responses given by the victim to three questions the mother had asked the victim. Immediately after discovering defendant in the victim's room, the victim's mother asked the victim, "Did Art [defendant] hurt you?"; "Are you okay?"; and "Do you want Art to leave?" According to the victim's mother, the victim responded to each of these questions in the affirmative.

Prior to trial, the trial court conducted a voir dire examination of the victim's mother to determine whether the victim's responses were admissible into evidence. Although the trial court agreed that the responses constituted hearsay, the trial court allowed their admission under the excited-utterance exception, Evid.R. 803(2). Defendant sets forth a three-part argument in asserting the trial court erred in allowing the evidence to be admitted: first, the mother's leading questions negated the spontaneity of the victim's declarations; second, the testimony demonstrated the victim's incompetence; and third, the evidence was irrelevant and/or unduly prejudicial.

Evid.R. 803(2) states as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Statements which are admissible into evidence within the parameters of Evid.R. 803(2) derive their trustworthiness from "the fact that declarant is under such a state of emotional shock that his reflective processes have been stilled." See Staff Note to Evid.R. 803(2). Moreover, the admissibility of the statements does not depend upon the availability of the declarant as a witness at trial. Evid.R. 803.

Defendant first contends that, because the victim's answers were elicited in response to leading questions by her mother, the answers lacked the spontaneity which is the hallmark of the excited-utterance exception. Defendant relies upon *State v. Wallace* (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, to support his assertion that leading questions preclude the admission of such declarations. *Wallace* holds in paragraph two of the syllabus, as follows:

"The admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the

declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties."

Defendant in this case argues that the questions asked by the victim's mother were clearly leading. However, under the circumstances present in this case, the issue is whether the questions were so "leading" that they rendered the victim's responses less spontaneous. It is undisputed that the exchange between the victim and her mother took place within minutes of the victim's scream and that the victim's vocabulary and intellectual capacity are severely limited. The mother testified that the victim's mother and family are somehow able to distinguish when the victim answers yes or no in response to questions and that the victim had never before given an incorrect response to a question asked her by her mother. In light of the foregoing, the trial court erred in determining that the "leading" questions in this case did not destroy the spontaneity of the responses. See, also, *State v. Dickerson* (1977), 51 Ohio App.2d 255, 5 O.O.3d 377, 367 N.E.2d 927. The questions not only were leading but were not phrased so as to receive spontaneous responses which would indicate what actually had occurred and whether a crime had been committed.

Defendant also argues that the victim's answers were inadmissible as excited utterances because the testimony of the victim's mother demonstrated that the victim was incompetent as a child-witness. The mother testified that the victim has the I.Q. of a two year old. While defendant's argument erroneously focuses on the victim's competence as a trial witness, we find that, even under an excited utterance standard, the reliability of a "two year old's" statements is highly speculative and was not proved in this instance. A two year old, while perhaps incapable of actual fabrication, notoriously answers "yes" or "no" to questions depending on the way the question is asked, the mood the child is in, and other inexplicable factors. No case has been cited where a two year old's statement has been admitted. For an excited utterance of a child of tender years to be admissible (whether or not elicited by questioning), the evidence must indicate that the child possesses sufficient intelligence to render his or her statement reliable, notwithstanding his incompetency to testify at trial. Although perhaps this may be inferred with an older child, we find that a two-year-old child does not possess sufficient intelligence to render his or her out-of-court statements reliable (even if excited) in the absence of evidence establishing such level of intelligence. The statement of the mother that the child always responded properly by an appropriate sign to her questions does not establish such level of

intelligence. See, *e.g.*, *Adams v. State* (1894), 34 Fla. 185, 15 So. 905; *Oldham v. State* (1959), 167 Tex.Cr.R. 644, 322 S.W.2d 616.

■ Finally, defendant argues that the evidence was inadmissible as it was irrelevant or, if relevant, then unduly prejudicial. The state argues that the victim's affirmative answer to the most damaging question, that is, whether defendant hurt her, is relevant to indicate that defendant touched her in an erogenous zone, in light of the testimony establishing that the victim's vaginal area appeared red and irritated. However, insofar as the answer would also tend to support defendant's testimony that he attempted to turn the victim over by her upper arm, which would possibly hurt the victim's arm, the state has failed to show the reliability of the testimony. Moreover, the testimony can serve only to prejudice the jury upon the determinative issue whether defendant's hurting the victim constituted a sexual assault. Here we are not dealing with identity, that is, who "hurt" the victim. There is no question but that it was defendant. Rather, the so-called excited utterance was admitted for the purpose of proving what defendant did to the victim. Upon that issue, the questions and responses are so vague as to create a probability of unfair prejudice even if the other prerequisites for admission of an excited utterance had been met. Accordingly, the second assignment of error is well taken.

■ By his third assignment of error, defendant contends that the trial court erred in instructing the jury on the offense of attempted gross sexual imposition as a lesser-included offense of gross sexual imposition. We note initially that defendant failed to object to the charge given by the trial court and, thus, waived his right to contest the jury instructions. Crim.R. 30. Furthermore, defendant's argument is unfounded. Gross sexual imposition, with which defendant was charged in the indictment, is defined in R.C. 2907.05(A)(3), as follows:

"No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following apply:

" * * *

"(3) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person."

Under a reasonable view of the evidence, it is possible that the jury could have found that defendant was interrupted by the victim's mother before sexual contact with the victim was completed and, thus, the defendant was not guilty of gross sexual imposition but of attempted gross sexual imposition. Contrary to the facts in *State v. Wilkins* (1980), 64 Ohio St.2d 382, 18 O.O.3d 528, 415 N.E.2d 303, relied upon by defendant, this is not the case where two totally divergent stories were presented to the jury, which was then forced to

reach an unreasonable result. Rather, it was reasonable for the jury herein to reach the result it did under the evidence adduced, the problem being the admissibility of some of that evidence. See *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. Defendant's third assignment of error is not well taken.

 Finally, by his fourth assignment of error, defendant argues that his conviction of the offense of attempted gross sexual imposition was against the manifest weight of the evidence. Defendant contends that circumstantial evidence alone was relied upon to prove his guilt and that he offered a reasonable theory of innocence which therefore precluded a finding of guilt.

Defendant testified at trial that he had gone into the victim's room in response to her whimper; that he found her on her stomach and attempted to turn her over by grasping the back of her diaper and her upper arm; that the diaper gave way and defendant's foot slipped, causing the victim to scream; that he had just come from the bathroom and did not remember zipping his pants up; and that the victim's mother appeared immediately after the victim screamed. Defendant thus contends that the circumstantial evidence is equally consistent with his reasonable theory of innocence, which precluded a finding of guilty. *State v. Ebright* (1983), 11 Ohio App.3d 97, 11 OBR 150, 463 N.E.2d 400.

 Assessing the credibility of the witnesses is a matter within the province of the jury. In view of the fact that the jury apparently chose not to believe defendant's version of the events, the following evidence remains: Defendant was discovered in the victim's bedroom immediately after the victim's mother heard the victim scream. Defendant's pants were unzipped, although buttoned, and his belt was undone and was pulled partially out of the belt loops. The victim was lying on her back, and one side of her disposable diaper was undone, partially exposing her vaginal area. Testimony from both the victim's mother and two police officers who came to the scene indicated that the victim's vaginal area appeared red and irritated. When confronted by the victim's mother and the victim's mother's husband, defendant offered no explanation for his presence in the victim's bedroom. Moreover, in response to questioning by the police shortly after his arrest, defendant contended that he was never in the child's bedroom and that he never touched her.

Further, the victim's mother testified that the victim was always placed on her back at bedtime and that she was physically unable to roll from her back to her stomach, although defendant testified that the victim was on her stomach. Also, the victim was not found close to the edge of the bed after the incident, as testified to by defendant. Further, due to the physical affliction of her hands, the victim was physically unable to touch her own genital area;

however, independent testimony established that the child's vaginal area was red and irritated, despite the fact that the victim's mother had noticed no rash or irritation in that area when she put her in bed approximately thirty minutes earlier. Essentially, defendant's credibility is at issue, and the jury chose not to believe defendant's version of the incident. Moreover, the inferences drawn from the circumstantial evidence which support a finding of guilty are so strong that a reasonable theory of innocence cannot be drawn from the evidence. The fourth assignment of error is not well taken.

For the foregoing reasons, the first and second assignments of error are sustained; the third and fourth assignments of error are overruled; the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court with instructions to discharge defendant in accordance with R.C. 2945.73(B).

*Judgment reversed*
*and cause remanded*
*with instructions.*

BOWMAN, P.J., and HARSHA, J., concur.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting by assignment.