Because I conclude that Danny J. Webber's conviction for felonious assault after his violent struggle with a Medina police officer where Webber thrice grabbed the officer's loaded holstered handgun, was supported by the manifest weight of the evidence, I must respectfully dissent from the majority's conclusion to the contrary.
The majority concludes that Webber's conviction for felonious assault is against the manifest weight of the evidence. Specifically, the majority states that the absence of actual control of the officer's handgun, or an express threat, demonstrates that the jury clearly lost its way in finding Webber guilty of felonious assault. I disagree.
The offense of felonious assault is defined by R.C.2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2923.02(A) defines attempt as: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The Ohio Supreme Court has interpreted criminal attempt to mean "when one purposely does * * * anything which is an act * * * constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." State v.Woods (1976), 48 Ohio St.2d 127, paragraph one of the syllabus, vacated as to death penalty (1978), 438 U.S. 910, 98 S.Ct. 3133,57 L.Ed.2d 1153, overruled on other grounds by State v. Downs
(1977), 51 Ohio St.2d 47.
In the instant case, Officers Grice and Ahern of the Medina Police Department were attempting to arrest Webber at the apartment of Webber's abused girlfriend on an arrest warrant issued two days earlier. In an attempt to escape, and refusing orders to stop, Webber charged into and toppled Officer Ahern. Webber then commenced a desperate and violent struggle, at which time Webber grabbed Officer Ahern's loaded and holstered handgun not once, not twice, but thrice. In the heat of this potentially life threatening grapple Officer Ahern exclaimed: "He's got my gun!" Officer Grice joined in, but the officers could not subdue the rampaging Webber for approximately ten minutes.
The majority relies on State v. Green (1991), 58 Ohio St.3d 239, syllabus, and State v. Brooks (1989), 44 Ohio St.3d 185, syllabus, which provide that pointing a deadly weapon at another without additional evidence of intent, such as a threat, is insufficient to sustain guilt for a felonious assault. However, the facts and law of these cases are not dispositive of the case at bar.
The act of pointing a handgun at another from a distance is comparatively passive conduct compared to an intimate, face-to-face, possible life and death struggle between a police officer and an arrestee over a loaded holstered handgun. Having been physically stopped by Officer Ahern, the resulting violent struggle by Webber, and his repeated grabbing of Officer Ahern's loaded holstered handgun, were not merely passive acts or acts of evasion. Rather, Webber's grabbing of the loaded handgun holstered on Officer Ahern's hip as they violently grappled could readily have been inferred by the jury to have been a substantial step toward attempting to cause serious physical harm. See R.C.2903.11(A)(2). See, also, Woods, supra. The jury's conclusion is further buttressed by the fact that Webber grabbed Officer Ahern's loaded handgun on three occasions, and that Webber self-servingly (and unconvincingly) denied ever reaching for the handgun during the violent struggle, despite the testimony of two police officers and other witnesses to the contrary. Webber's incredible denial was obviously refuted and regarded as a lie by the jury considering the jury's verdict. It is well settled that the "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Webber's evident falsity, in turn, was further circumstantial evidence from which the jury could have infered Webber's criminal purpose and guilt.
It is axiomatic that circumstantial evidence is as probative of guilt as direct evidence. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. The evidence in this case, both circumstantial and direct, must be viewed in close tandem, and once taken together, it is manifest that the jury did not lose its way. Webber should not get special credit for failing to unholster the handgun and blast away at Officer Ahern.
The absence of an express threat does not change this analysis. The majority seems to place great weight on the fact that "[t]here was no testimony * * * that Webber made threats to shoot the gun." There is no talismanic requirement that a threat be pronounced as an element of felonious assault. See R.C.2903.11(A)(2). Simply put, words need not be spoken to sustain guilt for felonious assault. See, generally, Brooks, supra. Webber's aggressive, violent conduct obviates any need for scrutiny as to the presence or absence of threats.
Lastly, the analysis of the majority seems to ignore the well settled distinction between the standards for evaluating sufficiency of the evidence claims and manifest weight of the evidence claims. See State v. McDougal (June 7, 2000), Lorain App. No. 99CA007405, unreported, at fn. 2 ("Defendant has confused the standard for sufficiency under Crim.R. 29 and the standard for sufficiency under Crim.R. 29 and the standard for manifest weight. These are distinct concepts, as this court previously stated * * *."). The test for sufficiency requires a determination as to whether the state has met its burden of production at trial, while a manifest weight challenge questions whether the state has met its burden of persuasion. See State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook, J., concurring). The majority does not address the quality of the state's case, but rather focuses on thesufficiency of the evidence in the state's case. This inartful blurring of separate legal concepts offends the express command of the Ohio Supreme Court: "The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Id. at 386.
Because Webber's conviction for felonious assault is supported by the manifest weight of the evidence I dissent from the conclusion of the majority that assignment of error four is "well taken."[1] I concur, however, in the result that Webber's conviction for felonious assault stands.
While I concur with the majority's conclusion in the third assignment of error that trial counsel for Webber was not ineffective, I write separately to address a flaw in one aspect of the majority's reasoning. In conducting its analysis, the majority referred specifically to Officer Ahern's "most objectionable statement," as his exclamation in the midst of his violent struggle with Webber: "He's got my gun!" At trial defense counsel did not object to Officer Ahern's exclamation, and for that the majority admonishes "the better practice would be for counsel to object to hearsay statements * * *."
Officer Ahern's statement was not objectionable because his exclamation fits a firmly rooted exception to the rule against hearsay. See Evid.R. 802. Excited utterances are one such exception, and are defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). See State v. Wallace (1988), 37 Ohio St.3d 87, 88.
Under the facts of this particular case, Officer Ahern's exclamation that Webber "got my gun," in the midst of a violent struggle qualifies as an excited utterance. Though pronounced indicta, the suggestion of the majority that an exclamation made while under attack is inadmissible hearsay does violence to well settled excited utterance precedent, and denies the application of mandated exceptions to hearsay under Evid.R. 803(2). See Wallace, supra.
The touchstone of the Sixth Amendment ineffective counsel claim is prejudice to the client. Strickland v. Washington
(1984), 466 U.S. 668, 687. "[The] trial tactics of defense counsel generally are not enough to give rise to a claim of ineffective assistance of counsel. See State v. Clayton (1980),62 Ohio St.2d 45, 48-49. The decision to object to the admission of evidence * * * is a trial tactic." State v. Ray (Nov. 22, 1995), Summit App. No. 17248, unreported, appeal not allowed (1996),75 Ohio St.3d 1484. Not objecting to admissible evidence can never be the basis for finding counsel ineffective under the Sixth Amendment. The statements of the majority in dicta suggest an unwarranted drift away from the bedrock notion that trial tactics are insufficient to demonstrate the ineffective assistance of counsel. Clayton and Ray, supra. Accordingly, while I concur with the majority that defense counsel's conduct was not ineffective, I disagree with the reasoning employed by the majority.
I concur with the balance of the opinion, and concur fully with the ultimate judgment rendered in this case.
[1] When resolving manifest weight of the evidence claims, the Ohio Supreme Court has commanded that "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Thompkins, supra, at paragraph four of the syllabus. Based on the foregoing, I believe that it is incorrect for the majority to conclude its discussion of assignment of error four as finding the claim "well taken." Such a conclusion is only properly made, even rhetorically, solely upon the concurrence of all three judges.