OPINION
{¶ 1} Appellant, James L. Shelton, Jr., appeals from the judgment of the Portage County Municipal Court, Ravenna Division, convicting him of one count of domestic violence.
{¶ 2} On August 21, 2000, a criminal complaint was filed against appellant, charging him with one count of domestic violence, in violation of 2919.25(A), a misdemeanor of the first degree.
{¶ 3} On October 30, 2000, a bench trial was held. The state's evidence consisted solely of the testimony of Denise Smith ("Smith"), a witness, who was also the chief of the civil division of the Portage County Prosecutor's Office.
{¶ 4} Smith testified that, on August 19, 2000, she was moving to a new house on the South side of Minyoung Road directly across the street from her old house, which was on the North side of the road. She attested that the Shelton family, consisting of Mr. James Shelton, Mrs. Jennifer Shelton ("Jennifer"), and their three children, to wit: Kayla, Jimmy, and Sarah, lived two houses down from Smith's new house, on the South side of the street.
{¶ 5} Smith further attested that, at approximately 2:30 p.m., on August 19, 2000, Jennifer, Kayla, Sarah, and Liz, Smith's friend who was helping her move, ran south towards Smith as she began to pull out of her driveway. Smith stated that Liz and six-year old Sarah arrived at her car first. She asked, "What happened, Liz?"
{¶ 6} Before Smith could state what Liz had told her, appellant's counsel objected, arguing that Liz's statements were hearsay, and thus, inadmissible. The trial court instructed the prosecution that unless it laid a foundation establishing that the statements were admissible under the excited utterance exception to the hearsay rule, as set forth in Evid.R. 803(2), the objection would be sustained.
{¶ 7} The prosecution laid a foundation by inquiring about Liz's demeanor. Smith testified that Liz "looked like something was wrong, somebody got hurt, somebody was in trouble." She also stated that, Liz, who is an asthmatic, was shaking and breathing "funny." The trial court found that the statement was an excited utterance, and overruled appellant's objection. Smith then attested that, in reply to her question, Liz stated: "[Appellant] is trying to hurt [Jennifer]." Liz then ran up the driveway to Smith's new house.
{¶ 8} Smith attested that Jennifer and Kayla arrived at the car several seconds later. Appellant's counsel objected to Smith testifying as to what Jennifer told her on the grounds that the statements were inadmissible hearsay. The prosecutor proceeded to lay a foundation by establishing Jennifer's demeanor at the time of the incident. Smith testified that Jennifer "looked terrified or worried like something was wrong — something was happening." Jennifer was crying, breathing heavily, and shaking. Kayla was also shaking. Smith attested that she observed long, red marks on Jennifer's neck. Based on Smith's testimony, the court found that Jennifer's statement to Smith was also an excited utterance.
{¶ 9} Smith then testified that Liz said, "Get out of the way. He is going to hit you with his car." Smith stated that she did not move, but instead remained in the street. Appellant stopped his car next to Smith's. Smith attested that she spoke to him through the open car window, asked him what was going on, and told him to take a ride to "cool off." In response, appellant said something like, "I guess I'll just quit my job and the heck with all of them."
{¶ 10} Smith stated that she then got out of her car and approached Jennifer, who was either in Smith's garage or on the screened porch. Approximately three minutes had passed since Smith had first spoken with Jennifer and she was still crying and sobbing. Kayla and Sarah were also upset. Appellant's counsel again objected to Smith testifying as to what Jennifer told her, on the basis that her statement was inadmissible hearsay; however, the court overruled the objection.
{¶ 11} Smith testified that when she asked Jennifer what happened, Jennifer told her, "[Appellant] got mad, and tried to kill me." Smith attested that Jennifer told her that she and appellant had gotten into an argument over a phone call, and appellant struck her. As a result, Jennifer asked Kayla to call 911, and told appellant that she was "not going to take this anymore." Appellant twisted Jennifer's neck and told Kayla, "You put that phone down or I'm going to kill her right here." Smith stated that Jennifer demonstrated how appellant had twisted her head and neck, by putting her hands up to her neck in the areas of the red marks.
{¶ 12} Smith then stated that Jennifer "had calmed down at that time and was just telling [her] what happened." Appellant's counsel then renewed his objection and asked that Smith's testimony be stricken, arguing that once Jennifer had calmed down, her statements were no longer excited utterances. The court overruled the motion with regard to Smith's testimony up to the point that she testified that Jennifer had calmed down, and sustained the objection as to any further statements. No further statements were admitted that were made by Jennifer to Smith after Smith testified that Jennifer "had calmed down."
{¶ 13} At the close of the state's case in chief, appellant moved, pursuant to Crim. R. 29, for the court to dismiss on the grounds that the state failed to prove the elements of domestic violence beyond a reasonable doubt. The motion was denied. Appellant declined to call any witnesses, or present any exhibits. Appellant renewed his motion to dismiss; however, it was denied.
{¶ 14} At the conclusion of the bench trial, on October 30, 2000, appellant was found guilty of domestic violence and a pre-sentence investigation was ordered.
{¶ 15} On January 29, 2001, appellant's counsel, Terry G. P. Kane, filed a motion to withdraw. On January 31, 2001, the trial court granted counsel's motion to withdraw and entered Paul B. Daiker as new counsel of record.
{¶ 16} On February 16, 2001, appellant moved for a new trial and/or modification of the judgment based on the following three grounds: (1) there was an irregularity in the proceedings, to wit: the state's sole witness, Denise Smith, was appellant's former attorney in an unrelated civil suit and is a current member of the Portage County Prosecutor's office; (2) appellant had discovered new evidence; and, (3) the trial court's judgment was against the manifest weight of the evidence.
{¶ 17} On March 21, 2001, after a hearing, the trial court overruled appellant's motion for new trial and sentenced appellant to one hundred eighty days in jail. The jail time was suspended on the condition that appellant complete counseling with Coleman Professional Services. Appellant was placed on supervised probation for one year. Execution of sentence was stayed pending appeal.
{¶ 18} From this judgment and sentence, appellant appeals raising three assignments of error for our review:
 {¶ 19} "[1.] The trial court erred to the prejudice of [appellant] and abused its discretion by allowing hearsay to be admitted under the excited utterance exception.
 {¶ 20} "[2.] The trial court erred to the prejudice of [appellant] and abused its discretion by denying [appellant's] motion for a new trial.
 {¶ 21} "[3.] The verdict is against the manifest weight of the evidence."
{¶ 22} In appellant's first assignment of error, he argues that Smith's testimony regarding Jennifer's narrative was inadmissible hearsay. Specifically, appellant contends that Jennifer was reflective and no longer under the excitement of the event. In opposition, appellee, the state of Ohio, argues that the statements were admissible under the excited utterance exception to the hearsay rule.
{¶ 23} A trial court's decision to admit a statement as an excited utterance under Evid.R. 803(2) will not be reversed absent an abuse of discretion. State v. Kerr (Oct. 9, 1998), 11th Dist. No. 97-L-032, 1998 Ohio App. LEXIS 4850 at *33. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Evid.R. 803(2), provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is an admissible exception to the hearsay rule. For a purported excited utterance to be admissible there must have been: (1) an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. State v. Taylor (1993), 66 Ohio St.3d 295, 300-301.
{¶ 24} Additionally, when deciding whether a statement is an excited utterance, the court should consider: (a) the lapse of time between the event and the declaration; (b) the mental and physical condition of the declarant; (c) the nature of the statement; and (d) the influence of intervening circumstances. State v. Humphries (1992),79 Ohio App.3d 589, 598. "There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement maynot be a result of reflective thought." (Emphasis sic.) Taylor, supra at 303.
{¶ 25} Further, "[t]he admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v. Wallace (1988), 37 Ohio St.3d 87, paragraph two of the syllabus.
{¶ 26} In the instant case, Jennifer's statements were made before there had been time for the stress of excitement caused by the event to dissipate. Approximately three minutes had elapsed between the event and Jennifer's declaration that appellant threatened to kill her and twisted her neck with enough force to leave red marks, which were observed by the witness.
{¶ 27} After the incident, Jennifer ran approximately five hundred feet to Smith's vehicle. Upon Jennifer's arrival at the vehicle, Smith observed that she was breathing heavily, crying, and shaking. Smith also observed that Jennifer had long red marks on her neck. See Humphries,
supra.
{¶ 28} When appellant pulled up in his car, Jennifer went to either Smith's garage or screened porch. When Smith spoke with Jennifer, a few seconds later, Jennifer told her that appellant had twisted her neck and threatened to kill her. With regard to Jennifer's mental condition, the witness described Jennifer as crying, sobbing, and very upset. The statements were contemporaneous in nature and were not influenced by any intervening circumstances. See Humphries, supra.
{¶ 29} Smith's recollection of Jennifer's statements reveal that the declarant's statements were made while she was still under the stress of the event and were not the result of reflective thought. Jennifer initially stated, "He got mad, and he tried to kill me." After Smith inquired further as to what happened, Jennifer stated that she and appellant had an argument that escalated into the aforementioned threat and assault. Jennifer demonstrated how appellant twisted her head and neck. Jennifer's statements were not the result of reflective thought; instead, they were her recollection of the startling event that she had just experienced.
{¶ 30} Further, we conclude that Smith's questions served to initiate conversation. They were not coercive, nor did they destroy the domination of nervous excitement over her faculties. See Wallace, supra.
{¶ 31} The trial court properly determined that Smith's testimony regarding Jennifer's statements, up until the point that Smith attested that Jennifer had calmed down, was admissible under the excited utterance exception to the hearsay rule. Accordingly, we conclude that the trial court's admission of Smith's testimony relating the statements Jennifer made to her was not unreasonable, arbitrary or unconscionable, and, therefore, was not an abuse of discretion. Appellant's first assignment of error lacks merit.
{¶ 32} In appellant's second assignment of error, he argues that the court abused its discretion in denying his motion for a new trial.
{¶ 33} Crim.R. 33(B) provides that an application for new trial shall be made by motion, which, except for the case of newly discovered evidence, shall be filed within fourteen days of the decision of the court. Appellant's motion was untimely. The court entered its decision on October 30, 2000 and appellant's motion for new trial was not filed until February 16, 2001. Although appellant's motion was not timely, we will briefly address its merits.
{¶ 34} Appellant contends that a new trial should have been granted because: (1) There was an irregularity in the proceedings, to wit: the prosecution called only one witness, appellant's attorney in a previous, unrelated civil case and also a current member of the Portage County Prosecutor's office; (2) appellant discovered new evidence; and, (3) the judgment was against the manifest weight of the evidence.
{¶ 35} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro
(1947), 148 Ohio St. 505, syllabus.
{¶ 36} First, appellant argues that he should have been granted a new trial due to irregularities in the proceedings. However, he offers no support for his argument that he was unable to receive a fair trial simply because Smith was employed by the Portage County Prosecutor's office in the civil division and was his former attorney in an unrelated civil suit. The record is devoid of any evidence that Smith breached any confidentiality she had with appellant as a result of her representation. We cannot conclude that the testimony of Smith, a lay witness, constituted an irregularity simply because she was employed by the Portage County Prosecutor's office and was appellant's former counsel in an unrelated matter.
{¶ 37} Next, appellant argues that he is entitled to a new trial because of newly discovered evidence. The newly discovered evidence consists of Jennifer's affidavit, wherein she attested that, prior to trial, she saw Smith reading a file or document that had appellant's name on it, and, a few minutes later, observed Smith, Prosecutor Michelle Stuck and Judge Watson engaged in conversation. Appellant also submitted a letter from Smith addressed to appellant and Jennifer, advising them that Smith was unable to continue representing them in a civil case, due to a conflict of interest.
{¶ 38} Jennifer's affidavit does not contain evidence disclosing a strong possibility that if a new trial were granted there would be a change in the result. The affidavit does not explain how Smith's review of a document or file, that may have had appellant's name on it, would change the outcome of the case, nor does it explain how a conversation about an unknown matter between two co-workers and a judge was prejudicial to appellant.
{¶ 39} Lastly, appellant argues that the judgment was against the manifest weight of the evidence. An appellate court reviewing a criminal judgment to determine whether it is against the manifest weight of the evidence, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175.
{¶ 40} The instant case is not one in which the evidence weighs so heavily against the conviction that we must reverse the conviction and grant a new trial. Appellant asserts that no witness testified as to having witnessed any domestic violence or threats. Although Smith did not herself witness any domestic violence or threats, her testimony regarding Jennifer's excited utterances provided evidence that appellant "knowingly cause[d] * * * physical harm to a family or household member," in violation of R.C. 2919.25(A). Specifically, she testified that Jennifer told her that appellant threatened to kill her and caused her physical harm by twisting her neck. Smith also attested that Jennifer had red marks on her neck.
{¶ 41} Since the only evidence presented in this case was Smith's testimony, her testimony is undisputed. Appellant did not present evidence other than his cross-examination of Smith. Smith's testimony on direct and cross-examination did not reveal any inconsistencies or show any reason to question her credibility. Therefore, we cannot conclude that the judgment was against the manifest weight of the evidence. Appellant's second assignment of error lacks merit.
{¶ 42} Based on our disposition of appellant's second assignment of error, appellant's third assignment of error is without merit.
{¶ 43} In light of the foregoing, the judgment of the Portage County Court of Common Pleas is hereby affirmed.
WILLIAM M. O'NEILL, P.J., DONALD R. FORD, J., concur.