OPINION
John D. Rockwell ("Rockwell") was found guilty of domestic violence by a jury in the Montgomery County Court of Common Pleas. The trial court sentenced him to nine months of imprisonment.
The state's evidence established the following facts.
Rockwell and Edna Brown ("Brown") were living together in Brown's home in December of 2001. On December 26, 2001, the two went together to several bars, where Brown became intoxicated. Upon returning to Brown's home in the early morning hours of December 27, 2001, the two became engaged in an argument regarding Brown's suspicion that Rockwell was having an affair. During this argument, at approximately 2:00 to 2:30 a.m., Rockwell knocked Brown to the floor, grabbed her neck, and punched her in the eye. He then left. Immediately after Rockwell left, Brown called 911 and then her daughter Christina. She reported to both the 911 operator and to Christina that Rockwell had hit her. Christina testified that her mother had sounded upset on the phone.
At approximately 2:30 a.m., Officer Brad Wilson responded to Brown's home. He testified that Brown had been "obviously upset" upon his arrival and that she had been "sniffling and crying." Due to her intoxication, Brown was unable to write out a statement for Officer Wilson, so she explained to Christina what had happened and Christina wrote out the statement. Christina testified that her mother had been "crying and shaking" to the point where it had been difficult for Christina to understand her. After Christina wrote her mother's statement, Officer Wilson took photographs of Brown's face and neck, which were red and swollen. The next day, more pictures were taken of Brown's eye.
Rockwell was arrested on December 27, 2001 and subsequently charged with domestic violence. He stipulated that he had had a previous conviction for domestic violence, elevating this offense to a fifth degree felony. A jury trial was held on June 17, 2002. The jury found Rockwell guilty, and the trial court sentenced him to nine months of imprisonment.
Rockwell appeals, raising two assignments of error.
 "I. MR. ROCKWELL'S CONVICTION SHOULD BE REVERSED BECAUSE THE STATE FAILED TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT AND THE JURY VERDICT WAS ACCORDINGLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 175.
Rockwell argues that his conviction was against the manifest weight of the evidence because the evidence supports his contention that he did not hit Brown. According to Rockwell, Brown was intoxicated and angry with him because she suspected him of having an affair. He refused to spend the night with her and was ending their five-year relationship. Thus, he appears to argue that she had reason to lie about him hitting her. He further argues that she had a skin condition called rosacea, which could cause redness and swelling on her face, and that she had exacerbated that condition by consuming alcohol and spicy food during the course of the evening. Finally, he notes that he has consistently denied hitting Brown and that Brown told the 911 operator that his hitting her was "all [her] fault."
None of these factors necessitate a conclusion that Rockwell's conviction was against the manifest weight of the evidence. His argument reduces the case to a credibility issue. He argues that there was no evidence other than Brown's testimony that he had hit her and cites to various factors that he contends make his testimony more credible. First, we note that numerous photographs of Brown's face depicting bruising around her eye and redness and swelling in her face were admitted at trial. These photographs serve as evidence corroborating Brown's version of events. Second, the credibility of witnesses is a matter left to the determination of the jury. While Rockwell presented the jury with a potential motive for Brown to fabricate her story and an alternative explanation for the swelling and redness on Brown's face, the jury clearly believed Brown. Based upon the evidence, we do not believe that the jury clearly lost its way and reached a verdict that was against the manifest weight of the evidence.
The first assignment of error is overruled.
 "II. MR. ROCKWELL WAS DENIED OF [SIC] HIS RIGHT TO A FAIR TRIAL BECAUSE INADMISSIBLE AND UNRELIABLE HEARSAY EVIDENCE WAS USED TO SECURE THE CONVICTION AGAINST HIM."
Under this assignment of error, Rockwell argues that the trial court erred in admitting the hearsay testimony of Christina and Officer Wilson regarding three statements made by Brown: (1) Brown's statement to Christina on the telephone that Rockwell had hit her, (2) Brown's recitation of the facts of the incident to Christina for the purpose of completing the police statements, and (3) Brown's statements to Officer Wilson upon his arrival that Rockwell had hit and choked her. The state argues that the testimony was admissible under exceptions to the hearsay rule.
The first testimony regarding which Rockwell complains is Christina's testimony that, during their telephone conversation, Brown told her that Rockwell had hit her. The trial court admitted this testimony under the exception to the hearsay rule providing that:
 "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." Evid.R. 803(3).
This exception to the hearsay rule is limited to statements concerning the then-existing mental, emotional, or physical condition of the declarant. See State v. Apanovitch (1987), 33 Ohio St.3d 19, 21,514 N.E.2d 394. It does not permit testimony regarding the reasons for the condition. See id. Therefore, a statement by Brown that her face hurt would have been admissible, but a statement that Rockwell had hit her was not properly admitted pursuant to this exception. Christina testified that her mother had told her on the phone that Rockwell had hit her. Thus, the trial court erred in admitting Christina's testimony under Evid.R. 803(3). However, this testimony, and the other testimony regarding which Rockwell complains, was admissible under the excited utterance exception to the hearsay rule.
An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). The rationale for admitting such statements is that the declarant is unable due to the startling event to reflect on the statement sufficiently to fabricate it. See State v. Wallace (1988), 37 Ohio St.3d 87, 88, 524 N.E.2d 466. Such statements are admissible if the following four criteria are met:
 "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
 "(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
 "(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and
 "(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." Wallace, supra, at 89, citing Potter v. Baker (1955), 162 Ohio St. 488, 124 N.E.2d 140, paragraph two of the syllabus; In re Michael (1997), 119 Ohio App.3d 112, 128, 694 N.E.2d 538.
Rockwell argues that Brown was not still under the stress of the incident at the time that she made the statements in question and that she had had time to reflect upon her statements before making them. In reviewing a trial court's decision whether to admit testimony under the excited utterance exception to the hearsay rule, "[w]e must give a great deal of deference to the trial court's determination of whether a declarant is still under the influence of an exciting event when the statements are made." Michael, supra, at 131, citing State v. Duncan
(1976), 53 Ohio St.2d 215, 219-20, 373 N.E.2d 1234.
Rockwell contends that he left Brown's home around 1:00 a.m. and that she made the statements to Christina and Officer Wilson "as much as one and one half hours or more" after the incident allegedly occurred. Brown, however, testified that the assault occurred between 2:00 and 2:30 a.m. and that she immediately called 911 and her daughter. The police arrived at approximately 2:30 a.m. Thus, according to Brown's testimony, her statements were made within a half hour of the incident. In any case, the amount of time that has passed is not the determining factor in considering whether a declarant was still under the influence of an exciting event when the statements were made. The issue is whether Brown was, in fact, still under the stress of the incident at the time she made the various statements.
Rockwell argues that Brown was not hysterical and was "able to speak calmly" about the incident. However, Christina testified that her mother had been crying and upset when they spoke on the phone. She further testified that Brown had been crying and shaking so hard while relating the incident to Christina for the purpose of the police statement that it had been difficult to understand her. Officer Wilson testified that she had been upset and crying when he had arrived. This testimony provided a sufficient basis for the trial court to conclude that Brown was still under the influence of the stress of the incident at the time that she made her various statements.
Rockwell also argues that Brown was intoxicated and that she was upset due to that fact and her suspicions that he had been seeing another woman. However, Christina testified that she had seen her mother intoxicated on numerous occasions prior to December 27 and that it was not normal behavior for her mother to cry and shake while under the influence of alcohol. Furthermore, Brown testified that she had not been crying during her confrontation with Rockwell regarding his alleged affair. She had only begun to cry and shake after he had hit her.
Based upon the facts presented, the trial court did not abuse its discretion in admitting Brown's statements to Christina for the purpose of her police statement and her statements to Officer Wilson under the excited utterance exception to the hearsay rule. Although the court erred in admitting the statement Brown made to Christina on the telephone under the exception for then-existing mental, emotional, or physical state, that statement was also admissible under the excited utterance exception to the hearsay rule.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.